IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STAND UP FOR CALIFORNIA!, et al.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.<br><br>Defendants. | Civil Action No. 1:12-cv-02039-BAH<br><br>(consolidated with Civil Action No. 12-2071) |

**PLAINTIFFS STAND UP FOR CALIFORNIA!, ET AL.'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

Plaintiffs Stand Up for California!, Randall Brannon, Madera Ministerial Association, Susan Stjerne, First Assembly of God – Madera, and Dennis Sylvester ("Plaintiffs") respectfully submit this brief in opposition to the Federal Defendants' ("Defendants") motion to transfer this case to the U.S. District Court for the Eastern District of California (the "Eastern District"). This case challenges decisions made by Defendants in this District, which have potentially national import. It will be decided on an administrative record. Transferring this case is not in the public interest, nor will it further the convenience of the parties. It will, however, virtually ensure that Plaintiffs' motion for a preliminary injunction will not be heard or decided before Defendants effectuate their challenged decision and transfer the land into trust—potentially mooting Plaintiffs' request for relief. It will also enable Defendants to avoid less favorable precedent in this Circuit on the Secretary of the Interior's (the "Secretary") attempt to evade agency regulations that require him to self-stay the transfer of title pending the Court's resolution of this challenge. For all of these reasons, this Court should honor the Plaintiffs' choice of forum, which was indisputably proper, and deny the motion to transfer.

## I.     BACKGROUND

Seven plaintiffs in two separate cases filed complaints in this Court challenging the decisions of the Secretary taking land into trust for an Indian casino.[1] The land comprises 305 acres in Madera County, California (the "Madera Site") to be taken into trust for the North Fork Rancheria of Mono Indians.  The Secretary's approval of acquisition of the Madera Site is embodied in two Records of Decision ("RODs"): one issued in September 2011 under 25 C.F.R. Part 292, qualifying the land for gambling under the Indian Gaming Regulatory Act ("IGRA"), and one issued in November 2012 under 25 C.F.R. Part 151, taking the land into trust under the Indian Reorganization Act (the "IRA").  *See Land Acquisitions; North Fork Rancheria of Mono Indians of California*, 77 Fed. Reg 71,612 (Dec. 3, 2012).  Plaintiffs challenge the Secretary's decisions as violations of the IRA, IGRA, the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA").

For more than fifteen years, the Secretary has self-stayed the transfer of title in trust acquisition decisions that were challenged under the APA within 30 days of the notice of decision.  This practice has been pursuant to 25 C.F.R § 151.12(b), which was promulgated to "ensure the opportunity for judicial review of administrative decisions to acquire title to lands for Indian tribes" by "permit[ting] judicial review *before* transfer of title to the United States."  61 Fed. Reg. 18,082 (Apr. 24, 1996) (emphasis added).  In a letter to the Department of Justice,

---

[1] Plaintiffs are a non-profit 501(c)(4) citizens group that monitors gambling state-wide, called Stand Up for California!, Reverend Branson, the pastor of Grace Community Church in Madera, Madera Ministerial Association, the First Assembly of God, a Madera church, Dennis Sylvester, pastor of First Assembly of God, and Susan Stjerne, a resident living close to the Madera Site.  Plaintiffs filed their Complaint on December 19, 2012.  The seventh plaintiff in this litigation is the Picayune Rancheria of the Chukchansi Indians, a federally-recognized Indian tribe located in Madera County that operates a Class III gaming facility on reservation lands approximately 30 miles from the Madera Site.  The Picayune Rancheria filed its Complaint in *Picayune Rancheria of the Chukchansi Indians v. United States*, Case No. 1:12-CV-2071-BAH, on December 31, 2012.  These cases were consolidated by Minute Order of this Court issued on January 9, 2013.

dated December 18, 2012, the Secretary announced his abandonment of this long-standing practice with a limited self-stay until February 1, 2013, on condition that Plaintiffs file for preliminary injunction no later than January 2, 2013.  Letter from Michael Berrigan, Associate Solicitor-Indian Affairs, to Craig Alexander (Dec, 18, 2012) (Berrigan Letter, Ex. A).

Believing that the Secretary's deadline was unreasonable and did not permit judicial review before title transfer, Plaintiffs filed an Emergency Motion for Status Conference and Briefing Schedule on December 21.  ECF No. 11.  Pursuant to the Court's Minute Order of December 21, the parties filed a Joint Status Report responding to issues raised in the Minute Order.  On December 24, this Court set the current briefing schedule requiring Plaintiffs' motion for a preliminary injunction and its opposition to a motion to transfer to be filed January 11, and Defendants to file their motion to transfer by January 4 and their opposition to the motion for preliminary injunction by January 18, with a hearing to be scheduled for January 25.[2]

Two other actions challenging the Secretary's decision were also filed in this District; both were assigned to Judge Walton and consolidated as *United Auburn Indian Community of the Auburn Rancheria v. Salazar*, Case No. 1:12-CV-1988-RBW.  On January 4, Judge Walton granted the Government's motion to transfer *United Auburn* to the Eastern District.  Although a plaintiff in that case filed motions for a temporary restraining order and preliminary injunction to prohibit the Secretary from transferring the land into trust, Judge Walton's order reserved all pending motions for resolution by the transferee court.  As of the date of this filing, *United Auburn* has yet to be transferred or assigned a case number in the Eastern District.

---

[2] In light of the Court's order setting a briefing schedule, Plaintiffs have confirmed with the Secretary's counsel that the land will not be transferred prior to February 1 even though Plaintiffs did not file a motion for a preliminary injunction by January 2.

## II.     ARGUMENT

Transferring this case to the Eastern District is not in the public interest and does not further the convenience of the parties.  Transfer is not in the public interest because the Eastern District is so severely congested that it is highly unlikely that that court can address injunctive relief before the arbitrary deadline set by the Secretary for transfer of title.  This probability is reflected in a Minute Order issued by the Eastern District in another case (involving the same transaction as *United Auburn*), which denied the plaintiffs' motion to shorten time for consideration of a motion seeking to enjoin the Secretary's transfer of the land, explaining that,

> There are presently eleven matters calendared on January 23, 2013.  Due to the number of matters, the Court is unable to add Plaintiffs motion in order to give each matter the appropriate amount of attention and consideration it deserves.

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. Salazar*, 2:12-CV-3021-JAM-AC (E.D. Cal. Jan. 3, 2013) (ECF No. 12).[3]  Transfer does not serve the public interest considerations of efficiency and cost saving because all challenges relating to the underlying transaction are before the same judge in this Court.  Transfer would also not advance the convenience of any party because all plaintiffs chose to file in this District, and counsel for all parties, including Defendants, are resident in this District.  The sole ostensible reason Defendants proffer for transfer is advancement of local interests which are more accurately represented by the plaintiffs, a citizens group, residents, churches and clerics, and a local Indian tribe with an existing casino, than by Defendants, agencies and officials of the federal government located in this District.  It is perverse for Defendants to assert what is best for local

---

[3] The motion for a preliminary injunction cannot be scheduled March 20, 2013.  *Cachil Dehe Band of Wintun Indians*, 2:12-CV-3021-JAM-AC (E.D. Cal. Jan. 3, 2013) (ECF No. 16).

interests, all contrary to the wishes of all local parties, in order to advance its purposes in a transfer.

Indeed, Defendants seek transfer knowing full well that injunctive relief will not be addressed in the transferee court prior to the Secretary's transfer of trust title, potentially mooting Plaintiffs' request for relief.  Defendants are also well aware that the law of this Circuit is less favorable to them as it relates to the Secretary's attempt to evade agency regulations that require him to self-stay the transfer of title pending the Court's resolution of this challenge.

**A.     Venue Is Proper In This District**

The Complaints in this case raise issues of federal law only.  There is no claim under the law of the State of California.  Consequently, all federal district courts would have subject matter jurisdiction over the complaints.  The federal venue statute provides:

> A civil action in which a defendant is an officer or employee of the United States . . . or an agency of the United States . . . may . . . be brought in any judicial district in which (A) a defendant in the action resides, [or] (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated . . . .

28 U.S.C. § 1391(e)(1) (emphasis added).

There can be no dispute that under Section 1391 venue is proper in the District of Columbia.  All Defendants—the individual federal officers and the federal agencies—are located in this District.  Trust acquisition decisions relating to gaming must be made by the Secretary or Assistant Secretary-Indian Affairs.  *See* U.S. Dep't of the Interior, Fee-to-Trust Handbook, Ver. II § 1.2 (July 13, 2011).  Thus, a substantial part of the events giving rise to the claims occurred in this District.  Since the case involves federal decision-making relating to land that is located in the Eastern District, it is true that venue would also be proper there.

But the mere fact that a subject of the Secretary's challenged decision is land located in the Eastern District does not by itself support transfer. Had Congress meant to require venue changes whenever the subject of the action related to real property, it could have said so. The plain terms of 1391(e) refute such a reading. To elevate the location of the land over all other considerations would effectively judicially re-write Section 1391(e) to eliminate subsection A and the first half of subsection B. This would be improper under all circumstances, but is particularly inappropriate in a case such as this one, which is brought under the APA and challenges the Federal Government's decision-making in relation to land, because it would incorrectly convert Plaintiffs' grievances over federal decision-making to grievances about the land itself. Such a reading would be inconsistent with the Supreme Court's decision in *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Salazar*, 132 S.Ct. 2199, 183 L.Ed. 2d 211 (2012), which rejected the Secretary's past assertion that challenges to his trust acquisition decisions were disputes over the title to the land that were governed by the Quiet Title Act ("QTA"). *Id.* at 2208 (finding that plaintiff's challenge to the Secretary's trust acquisition decision "asserts merely that the Secretary's decision to take land into trust violates a federal statute—a garden variety APA claim").

If this case involved a claim by a plaintiff to title of the land, or a plaintiff's competing use of the land or, perhaps, even a claim to jurisdiction over the land, the case might properly be viewed as primarily a land dispute elevating the importance of the location of the land over the federal decisions relating to the land. But it is not. The claims made by Plaintiffs challenge the Secretary's authority under the IRA to take any land into trust for the North Fork Rancheria, regardless of its location. This suit also challenges the Secretary's compliance with IGRA and NEPA, in claims which raise primarily procedural failings and errors in statutory interpretation,

and the Secretary's violation of the APA because the records of decision do not demonstrate reasoned decision-making.

In sum, the issue at the heart of the complaints is how and where the agency decisions were made, which would reasonably give preeminence to events covered by Section 1391(e)(1)(A) and the first half of (B), rather than the geographical location of the land that underlies the Secretary's decisions, and is the basis of venue under the second clause of section 1391(e)(1)(B).

### B.   The Public Interest Favors Denying Transfer

One of the public interest factors a court must consider in resolving a transfer motion is the relative congestion of the transferee and transferor courts.  By definition, this factor involves a forecast or prediction of whether the handling of the controversy by one court or the other would better serve the interests of justice because presumably the more congested court would devote less attention to the case or proceed more slowly.  Defendants assert that courts in this Circuit assess relative congestion by "'comparing the median filing times to disposition in the courts at issue.'"  Fed. Def. Mot. 9 (ECF No. 20) (quoting *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n.*, 856 F. Supp. 186, 194 (D.D.C. 2012)); *see also United Auburn Indian Cmty. V. Salazar*, Case No. 12-CV-1988-RBW, slip op. at 3 (D.D.C. Jan. 4, 2013).  Defendants argue that there is little disparity between the congestion of the two courts by relying on data from September 2011, which covered a prior period.  But in September of 2011, the Eastern District had six active judges; today it has four.[4]  Thus, using the median filing times to disposition data substantially misrepresents what might become of this case if transferred.

---

[4] *See Judicial Vacancies,* available at JUDICIALNOMINATIONS.ORG, http://judicialnominations.org/judicial-vacancies.

Given the significant changes in the Eastern District's composition since September 2011, it is more appropriate to assess relative congestion between the two courts by dividing the number of filings by the number of active judges in the district. In 2011, this District had approximately 2500 filings, 2600 terminations, and 2700 pending cases handled by 15 judges with about 250 weighted filings per judgeship. *U.S. District Courts—Civil Cases Commenced, Terminated, and Pending during the 12-Month Periods Ending March 31, 2010 and 2011.*[5] By contrast, the Eastern District had approximately 5900 filings, 5900 terminations and 6800 pending cases in 2011 handled by six judges with about 1100 weighted filings per judgeship. *U.S. District Courts—Weighted and Unweighted Filings per Authorized Judgeship During the 12-Month Period Ending September 30, 2011.*[6] Although these data are also from 2011, the number of active judges in the Eastern District has declined by a third since then and there is no reason to assume that the filed cases have been reduced. To the contrary, two vacancies on the court are classified as judicial emergencies.[7]

Regardless which information makes for the better forecast of the effects on the interests of justice, the proposed transferee court here has recently spoken about its availability. When Judge Walton transferred the *United Auburn* case on January 4 to the Eastern District on the federal defendants' motion, there was pending in that district another complaint challenging the same transaction. A Minute Order issued in that case on January 3rd denied a motion to shorten time to calendar a motion for preliminary injunction. The Order stated that, given the current

---

[5] Available at http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2011/tables/C00Mar11.pdf.

[6] Available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/X1ASep11.pdf.

[7] Available at http://www.uscourts.gov/JudgesAndJudgeships/JudicialVacancies/JudicialEmergencies.aspx.

congestion of the docket of that court, it "is unable to add Plaintiffs' motion in order to give each matter the appropriate amount of attention and consideration it deserves." *Cachil Dehe Band of Wintun Indians*, 2:12-CV-3021-JAM-AC (E.D. Cal. Jan. 3, 2013) (ECF No. 12). The congestion is unsurprising, given the judicial openings in the district. And there is no reason to believe that, if this case were transferred, a motion for preliminary injunction could be addressed prior to the Secretary's deadline of February 1 for transfer of title. The motion for preliminary injunction filed in *Cachil Dehe Band of Wintun Indians* cannot be scheduled for hearing until March 20. *See* 2:12-CV-3021-JAM-AC (E.D. Cal. Jan. 3, 2013) (ECF No. 16). And although *United Auburn* was transferred almost a week ago, it has yet to be transferred or assigned a case number in the Eastern District.

A second public interest factor to be weighed is the local interest in local controversies. Defendants argue that because the land is located in the Eastern District, the case must be decided in that district in the interests of "concerned citizens" and that this "compelling interest can only be furthered by transfer of the case to the Eastern District of California." Fed. Defs.' Mot. at 9. Presumably even Defendants will agree that the Plaintiffs in this action, which include a citizens group, churches and their spokespersons are precisely the type of "concerned citizens" whose interests are impacted by the Secretary's decision and are the compelling motivator behind this lawsuit. The Chukchansi Indians are also concerned citizens whose interests must be considered in evaluating Defendants' motion to transfer.

One wonders why Defendants, whose actions are challenged in these complaints, should be purporting to speak for the interests of "concerned citizens," especially since it is an assertion made to evade the jurisdiction of the Court that a large group of the very citizens for which Defendants purport to speak have chosen as the venue for this litigation. It may be that local

interest in the controversy is a significant factor for the Court's consideration in a transfer motion, but it is far from clear why a court should credit Defendants' representation of the local interest in the face of the stated interests to the contrary by the local interest plaintiffs who are sufficiently concerned to file suit.

Moreover, it is shortsighted to call this a local controversy. To be sure the land in this trust acquisition—as in all trust acquisitions—is located in a state outside this District. The issues raised by the challenged decisions, however, are clearly decisions that are national in scope and importance, made in this District, by Defendants who are found in this District. This case involves similar national issues regarding the authority of the Secretary to take land into trust for "any recognized Indian tribe now under Federal jurisdiction," 25 U.S.C. § 479, whether the Secretary properly considered the detrimental impacts of the trust acquisition on the community and on neighboring Indian tribes, 25 U.S.C. § 2719(b)(1)(A), and whether the Secretary properly analyzed the tribe's historical connection to the land, under 25 U.S.C. § 2719 and 25 C.F.R. § 292.17(j).

Many Indian-related cases are filed in this District because many of the major decisions by the Bureau of Indian Affairs and the Department of the Interior are made here, and—as previously discussed—venue is therefore proper under 28 U.S.C. 1391. If the Defendants' land-centric reading of Section 1391 is deemed controlling then, because there are no Indian tribes located in the District and there cannot be any Indian trust land situated in the District, all federal disputes involving land outside the District of Columbia, including all Indian trust decisions, will be subject to transfer at the option of the federal defendants. That would be ironic since the *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians* case, which the Secretary uses in part to support his change in approach, involved a trust acquisition of land in Michigan, but was

-10-

adjudicated in this district and the D.C. Circuit. *See* 132 S.Ct. at 2203, 183 L.Ed. at 217. It would also give the government a free pass to forum shop, enabling it to successfully seek transfer whenever the precedent in the circuit where the land is located may be more favorable to its position.

Furthermore, unlike the *United Auburn* case, there is no complaint pending in the Eastern District of California with which these complaints might be consolidated in order to affect cost savings or the preservation of judicial economy.[8] This case is also distinguishable from other cases cited by Defendants. For example, there is not any history in the district involving the issues in this case or the land or tribes involved in the case. *See Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 267-68 (D.D.C. 2011) (finding the public interest favored transfer because of the transferee court's "specialized knowledge of both the parties, their history of litigation, and the statute at issue" as a result of an extensive history of similar litigation). Nor has there been any suggestion that Plaintiffs filed in this District as a means of forum shopping or avoiding unfavorable law of the transferee district. *Cf. Santee Sioux Tribe of Nebraska v. National Indian Gaming Comm.*, No. 99-528, slip op. 9-10 (D.D.C. Aug. 19, 1999) ("most persuasive of all, it is perfectly clear that Plaintiff is attempting to forum-shop and avoid the consequences of having lost its case before the Eighth Circuit") (Ex. F to Fed. Def's Mot.).

## C.     Transfer Would Not Further the Convenience of the Parties

The convenience of the parties is an elusive concept. When a plaintiff chooses a forum, one might assume that the plaintiff finds that forum convenient, and no other party's view of the plaintiff's convenience should be considered. Defendants claim that the Eastern District is more convenient for Plaintiffs, but they do not explain why. Plaintiffs, like Defendants, do not litigate

---

[8] One of the plaintiffs in *United Auburn* challenged the same trust acquisition in a case filed in the Eastern District.

APA challenges; their attorneys do.  Attorneys for Plaintiffs, as well as for Defendants and the intervening tribe, are all based in this District.  If the case is transferred to California, parties are faced with assuming the cost and inconvenience of having their attorneys travel to California.  The Department of Justice attorneys handling this case are all based in D.C. and would most likely have to deal with time differences and distance in filing papers in California, and would have to travel there to appear in court.  Defendants have not even suggested how California might be more convenient for them, let alone why it should be seen as a convenient forum for Plaintiffs.

There *are* two factors that may make transfer convenient for Defendants, but neither is within the purview of Section 1404 consideration and both should be rejected by the Court.  This Court set a schedule for this case that accommodated the Secretary's arbitrary deadline for transfer of title on February 1.  This imposed a significant burden on the Court and the parties.  As the parties work toward the expedited schedule in this Court, Defendants have moved to transfer, knowing well that it is not feasible for even expedited review of the case in the transferee court prior to the Secretary's February 1 deadline.  This is true as a matter of practical timing as well as due to the circumstances of the Eastern District.  The Secretary is acting in bad faith by moving to transfer while adhering to the arbitrary deadline for transfer of title because he is knowingly evading judicial review of his trust decision.  If, on the other hand, the Secretary is prepared to grant relief from his arbitrary deadline for title transfer, he is acting in bad form by subjecting the Court and the parties to this unnecessary schedule.

Plaintiffs filed a motion for expedited status conference on December 21 that explained how the law of this Circuit, unlike some other circuits, requires the Secretary to go through notice and comment rulemaking to reverse his interpretation of his binding regulations.  *See*

*Mortgage Bankers Ass'n v. Solis*, 864 F. Supp. 2d 193, 204 (D.D.C. 2012). In response, Defendants stated their intent to file a motion to transfer the case to the Eastern District. Joint Status Report, at 8, n. 4 (Dec. 24, 2012) Dkt. No. 14. If Defendants' motion is intended to avoid unfavorable law in this District, or to avoid judicial review through the timing of a transfer, it is improper and an appropriate basis for denying the motion.

**D.      Plaintiffs' Choice of Forum Was Appropriate And Should Be Honored**

There was a time when a plaintiff's choice of forum, at least if it was not for an improper purpose, counted in a Section 1404 analysis. *Shawnee Tribe v. United States*, 298 F. Supp 2d 21, 24 (D.D.C. 2002) (citing *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997) ("A plaintiff's choice of forum is afforded great deference, and is a paramount consideration in any determination of a motion to transfer.")). Recent cases in this District—including several cited by Defendants—seem to discount a plaintiff's choice if the plaintiff does not reside or have substantial connections to the District. That is a strange sentiment for a citizen's nexus to his Nation's Capital and the home of the government agency whose decision the citizen challenges. In any event, in at least one case, plaintiff's choice of a non-resident forum was given deference. In *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000), the plaintiff's forum choice was honored in light of the substantial involvement of the decision-maker located in the district. A recent decision explained that, "plaintiff's choice of forum in Washington D.C. was entitled to deference because the Secretary of the Interior was extensively personally involved in the decision-making process regarding" land in Alaska. *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d at 269.

In this case, Defendants were substantially involved in the decision-making process. Trust decisions involving gaming are made by the Secretary or, through delegation, by the

-13-

Assistant Secretary-Indian Affairs. The challenged decision is memorialized by two RODs. One ROD, which is 62 pages long, justifies the trust acquisition under Part 151 of the Secretary's regulations and is signed by Defendant Washburn, representing his support and reasoning for the decision. The other ROD, issued under Part 292, is an 89-page analysis, signed by Mr. Washburn's predecessor, Larry Echo Hawk. It would be difficult to demonstrate that the decision maker in *Wyandotte* had greater or more personal involvement than did the Assistant Secretary in the challenged decisions. Plaintiffs' choice of forum is entitled to substantial deference, particularly in a litigation such as this one, where transfer is neither in the public interest nor would further the convenience of the parties.

### III.   CONCLUSION

For all of these reasons, Plaintiffs submit that Defendants' motion to transfer this action to the Eastern District of California should be denied.

Respectfully Submitted,

| | |
|---|---|
| Dated: January 10, 2013 | By:/s/ *Benjamin S. Sharp* |

PERKINS COIE, LLP
Benjamin S. Sharp (D.C. 211623)
Perkins Coie LLP
700 Thirteenth Street, N.W. Suite 600
Washington, D.C.  20005-3960
Telephone:   202.654.6200
Facsimile:    202.654.6211
BSharp@perkinscoie.com

SNELL& WILMER, LLP
Heidi McNeil Staudenmaier (*admitted PHV*)
400 E. Van Buren Street
One Arizona Center
Phoenix, AZ 85004
Telephone:   602.382.6366
Facsimile:    602.382.6070
HStaudenmaier@swlaw.com

Sean M. Sherlock (*admitted PHV*)
Harsh P. Parikh (*admitted PHV*)
Plaza Tower
600 Anton Blvd.
Suite 1400
Cosa Mesa, CA 92626-7689
Telephone:   714.427.7036
Facsimile:    714.427.7799
SSherlock@swlaw.com
HParikh@swlaw.com

*Attorneys for Plaintiffs*
*Stand Up for California!, Randall Brannon, Madera Ministerial Association, Susan Stjerne, First Assembly of God – Madera, and Dennis Sylvester*

## CERTIFICATE OF SERVICE

      I hereby certify that on January 10, 2013, a copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Transfer was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

Dated:  January 10, 2013                             Respectfully submitted,

                                                    By: */s/ Benjamin S. Sharp*
                                                          Benjamin S. Sharp, D.C. Bar No. 211623
                                                          Perkins Coie LLP
                                                          700 Thirteenth Street, N.W., Suite 600
                                                          Washington, D.C.  20005-3960
                                                          Telephone:  202.654.6200
                                                          Facsimile:  202.654.6211
                                                          BSharp@perkinscoie.com

                                                          *Attorney for Plaintiffs*
                                                          *Stand Up for California!, Randall Brannon, Madera Ministerial Association, Susan Stjerne, First Assembly of God – Madera, and Dennis Sylvester*