IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**STAND UP FOR CALIFORNIA!, et al.,**

**Plaintiffs,**

v.

Civil Action No. 1:12-cv-02039

Assigned to the Hon. Beryl A. Howell

**UNITED STATES DEPARTMENT OF
THE INTERIOR, et al.,**

**Defendants.**

## DECLARATION OF CHERYL SCHMIT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Cheryl Schmit, declare as follows:

### General Background

1.      I make this declaration based upon my personal knowledge of the matters set forth below.

2.      I am over the age of 18 and competent to make this declaration.

3.      I am the founder and director of Stand Up For California! ("Stand Up"), a plaintiff in this action.  Stand Up is a 501(c)(4) nonprofit corporation that exists to advocate with and on behalf of community groups, local representatives, members of law enforcement, and individual supporters addressing the complex issues created by tribal gaming and tribal sovereignty.

4.      I have been Stand Up's director since 1996, when it was founded.  My responsibilities include participation in speaking engagements to other grassroots organizations, neighborhood meetings, and church groups in addition to various County Boards of Supervisors

and the California Gambling Control Commission, as well as testimony at Congressional and State legislative Assembly hearings.

5.      I follow federal and state administrative proceedings involving the acquisition of land to trust under the Indian Reorganization Act ("IRA") and the negotiation of gaming compacts between various Indian tribes and the State of California.  This includes requesting public records from government officials under the federal Freedom of Information Act ("FOIA") and the California Public Records Act ("CPRA"), conducting research on tribal history and land claims, and organizing participation in administrative hearings and other proceedings.

6.      I have presented oral testimony before both the House Resources Committee and the Senate Indian Affairs Committee of the United States Congress.  I have worked with Capitol Focus to provide information to the high school program on California gambling issues. I was appointed at the pleasure of the Placer County Board of Supervisors to serve on the Tribal County Advisory Committee in 2004, which was developed to allow the voice of the public in the ongoing developments of the United Auburn Indian Community's Thunder Valley Casino.

7.      I have authorized Stand Up to participate as a plaintiff in this litigation.

8.      Neither I nor Stand Up has a financial interest in the outcome of this litigation.

**North Fork Rancheria's Attempt to Acquire Property in Madera County**

9.      I have been tracking and monitoring off-reservation casino development since 1997.  In particular, I have been tracking and monitoring the North Fork Rancheria of Mono Indians' (the "North Fork Tribe") attempt to convince the Secretary of the Department of the Interior (the "Secretary" and the "Department") to acquire private land in Madera County, California since 2005.

10.      I have been a vocal opponent of the proposed fee-to-trust transfer of a private parcel of land located off of Highway 99 and Avenue 17 in the County of Madera (the "Casino Parcel") for the North Fork Tribe.  Along with its business partner, Station Casinos LLC, the North Fork Tribe proposes to use this parcel to operate a class III mega-casino.

11.      On September 1, 2011, the Bureau of Indian Affairs ("BIA") issued a Record of

Decision ("ROD") which memorialized the Secretary's determination that the acquisition complies with Indian Gaming Regulatory Act ("IGRA") and its implementing regulations at 25 C.F.R. Part 292 (the "IGRA ROD").   I obtained the IGRA ROD from the Department by contacting United States Senator Diane Feinstein's office in or about February 2012.  I am informed and believe that attached to the Appendix of Evidence as **Exhibit 19** is a true and correct copy of the IGRA ROD, which I expect will be part of the administrative record in this proceeding.

12.     Attached to the Appendix of Evidence as **Exhibit 20** is a copy of the November 26, 2012 Record of Decision for the Secretary's fee-to-trust transfer (the "IRA ROD"), which I obtained from Maria Weisman at the Office of Indian Gaming Management on or about December 10, 2012.  I am informed and believe that Exhibit 20 is a true and correct copy of the document, and I expect it will be part of the administrative record in this proceeding.  I am familiar with the BIA's methods for making public records, such as RODs, available to the public, including by posting them on their website.  In this case, the BIA did not make the IRA ROD publicly available on its website or distribute the IRA ROD to the surrounding community or stakeholders. I was required to repeatedly contact the BIA in order to obtain a copy of the IRA ROD, and was not able to obtain the IRA ROD until on or about December 10, 2012.  To the best of my knowledge, the IRA ROD is still not available on the BIA's website or distributed to the various stakeholders.

13.     Pursuant to IGRA, 25 U.S.C. § 2719(b)(1)(A),  the Secretary's decision to acquire the Casino Parcel in trust for the North Fork Tribe involves a two-part Secretarial determination that the acquisition (a) is in the best interests of the affected tribe and its members and (b) would not be detrimental to the surrounding community.  To the best of my knowledge, the Secretary has only approved 5 such land acquisitions since IGRA was enacted in 1988.

14.     There is widespread and significant public opposition to the proposed transfer into trust of the Casino Parcel.  During the administrative process, Stand Up expressed its objections to and comments on the proposed transfer in writing to the Secretary and the Department.

Attached to the Appendix of Evidence as **Exhibits 21-22** are true and correct copies of correspondence that I authored and sent on behalf of Stand Up to the Secretary and the Department. I expect that these Exhibits will be part of the administrative record in this proceeding.

15.     Attached to the Appendix of Evidence as **Exhibit 23** is a copy of a letter dated September 1, 2011, from Larry Echo Hawk, then Assistant Secretary for Indian Affairs, to California Governor Jerry Brown (the "Governor Concurrence Request"). I obtained this document in the course of my opposition to the Secretary's proposed fee-to-trust transfer. I am informed and believe that Exhibit 23 is a true and correct copy of the document, and I expect that it will be part of the administrative record in this proceeding.

16.     Attached to the Appendix of Evidence as **Exhibit 24** is a copy of the Department of the Interior's October 24, 2011 Response to the Hon Doc Hastings, Chairman of the Committee on Natural Resources, United States House of Representatives, regarding Questions for the Record. I obtained this document in the course of my work opposing the Secretary's proposed fee-to-trust transfer. I am informed and believe that Exhibit 24 is a true and accurate copy of the document, and I expect that it will be part of the administrative record in this proceeding.

17.     Attached to the Appendix of Evidence as **Exhibit 25** is a copy of Station Casinos LLC's ("Station Casinos") 10-Q Report for the quarterly period ending September 30, 2012, filed with the Securities Exchange Commission, which I obtained from Station Casinos' website (http://phx.corporate-ir.net/phoenix.zhtml?c=103083&p=irol-sec&secCat01.1_rs=11&sec Cat01.1_rc=10) on or about December 26, 2012. I am informed and believe that Exhibit 25 is a true and correct copy of Station Casinos' 10-Q Report, and I expect that it will be part of the administrative record in this proceeding.

18.     Attached to the Appendix of Evidence as **Exhibit 26** is a copy of a letter dated August 30, 2012, from Governor Brown in which he concurred with the Department's determination. I obtained this document from Governor Brown's website on or about September

3, 2012.  I am informed and believe that Exhibit 26 is a true and correct copy of the document, and I expect that it will be part of the administrative record in this proceeding.

19.     I have personally conducted my own research into the history of the North Fork Tribe.  To that end, I reviewed various federal acts, public records, court cases, and newspaper articles.  Based on my review of the Record of Decision in this matter, it appears that the Secretary did not consider or address the following when determining whether the North Fork Tribe was a recognized Indian tribe under federal jurisdiction as of June 18, 1934:

a.     I am informed and believe that attached to the Appendix of Evidence as **Exhibit 27** is a true and accurate copy of the Indian Appropriation Acts of June 21, 1906 (34 Stat. 383), April 30, 1908 (35 Stat. 70) and 1913 (38 Stat. 77) (collectively the "Acts"), which provided money to purchase land for residential and agricultural use for homeless Indians of no specific tribal affiliation.  I obtained the Acts from the Pacific Regional Office of the BIA by way of a FOIA request, and which I expect will be part of the administrative record in this proceeding.

b.     I am informed and believe that attached to the Appendix of Evidence as **Exhibit 28** is an accurate copy of the Records of the Special Agent at Large, Reno Indian Agency, Colonel L.A. Dorrington, which include a 1923 Annual Report and a letter dated June 23, 1927, which I received in or about 1998 from Penny LeDue, a homeowners association president whose husband was an attorney opposing the establishment of a tribal casino in California.  I expect that this document will be part of the administrative record in this proceeding.

c.     I am informed and believe that attached to the Appendix of Evidence as **Exhibit 29** is a true and accurate copy of a March 18, 1937 letter from the Commissioner of the Department of Interior to Senator Elmer Thomas, Chairman of the Committee on Indian Affairs.  To the best of my recollection, I received this document in 2002 in response to a FOIA request to the National Archives.  I expect that this document will be part of the administrative record in this proceeding.

d.      I am informed and believe that attached to the Appendix of Evidence as **Exhibit 30** is a true and accurate copy of the July 22, 1958 Termination Report to accompany H.R. 2824, which, to the best of my recollection, I obtained in 2001 from the California State Library in response to a CPRA request.

e.      I am informed and believe that attached to the Appendix of Evidence as **Exhibit 31** is a true and accurate copy of the 1958 Termination Act Report, which, to the best of my recollection, I obtained sometime in 2001. I expect that this document will be part of the administrative record in this proceeding.

f.      I am informed and believe that attached to the Appendix of Evidence as **Exhibit 32** is a true and accurate copy of the Stipulation for Entry of Judgment entered in *Hardwick v. United States,* C-79-1710 SW (N.D. Cal. 1983) (unpublished) on December 22, 1983, which I obtained on or about December 20, 2012 from the California Department of Justice. I expect that this document will be part of the administrative record in this proceeding.

g.      I am informed and believe that attached to the Appendix of Evidence as **Exhibit 33** is a true and accurate copy of the August 1986 Peace Officer Law Report from the California Attorney General, which I obtained on or about June 24, 2008 from the California Department of Justice. I expect that this document will be part of the administrative record in this proceeding.

h.      The North Fork Tribe did not formally organize its government until 1997 when it officially adopted its constitution. I am informed and believe that attached to the Appendix of Evidence as **Exhibit 34** is a true and accurate copy of the North Fork Tribe's amended fee-to-trust application, dated April 7, 2009, which I obtained in the course of my opposition to the Secretary's fee-to-trust acquisition. I expect that this document will be part of the administrative record in this proceeding.

i.      The DOI's internal list of tribes, prepared after *Carcieri*, states that the North Fork Tribe was recognized *after* 1934. I am informed and believe that attached to

the Appendix of Evidence as **Exhibit 35** is a true and accurate copy of the Department's

internal draft list of tribes, prepared after the *Carcieri v. Salazar* United States Supreme

Court decision, which I obtained on or about December 15, 2010 from the United States

Senator Diane Feinstein's office.  I expect that this document will be part of the

administrative record in this proceeding.

20.     In addition, the IRA ROD failed to consider comments presented by members of

the public, including residents of Madera County, the City of Madera, and elected officials, that

raised issues related to the following:  (a) environmental and economic impacts on Fresno,

Mariposa, Merced, and Madera counties; (b) infringement upon the tribal sovereignty of other

indigenous people, including the North Valley Yokuts and the Picayune Rancheria; (c) the

destructive and ruinous impacts on families, employers, and community social services caused

by gambling; (d) impacts on water supply and water wells on adjacent farms and homes; and (e)

increase in prostitution and other crimes.  I have reviewed correspondence from these residents

and elected officials.  These documents are part of the public record and are contained in the IRA

and IGRA RODs.  This includes the correspondence from and to the following individuals:

     a.      Kevin De Leon, California Assembly Assistant Minority Leader, 45th

Assembly District, to Carl Artman, Assistant to the Secretary of Indian Affairs, dated

March 10, 2008.  I am informed and believe that attached to the Appendix of Evidence as

**Exhibit 36** is a true and accurate copy of Assemblyman De Leon's letter, which I

obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application.

I expect that this document will be part of the administrative record in this proceeding.

     b.      Dean Florez, State Senator, District 16, to Carl Artman, dated March 6,

2008.   I am informed and believe that attached to the Appendix of Evidence as **Exhibit

37** is a true and accurate copy of Senator Florez's letter, which I obtained in the course of

my opposition to the North Fork Tribe's fee-to-trust application.  I expect that this

document will be part of the administrative record in this proceeding.

     c.      John Wright, Director of Planning and Development Services, to Amy

Dutschke, BIA, dated March 13, 2008. I am informed and believe that attached to the Appendix of Evidence as **Exhibit 38** is a true and accurate copy of Mr. Wright's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application. I expect that this document will be part of the administrative record in this proceeding.

      d.      United States Senators Harry Reid and Dianne Feinstein to Interior Secretary Dirk Kempthorne dated May 9, 2008. I am informed and believe that attached to the Appendix of Evidence as **Exhibit 39** is a true and accurate copy of Senator Reid and Senator Feinstein's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application. I expect that this document will be part of the administrative record in this proceeding.

      e.      Carl Artman to Dale Morris, BIA, dated May 12, 2008. I am informed and believe that attached to the Appendix of Evidence as **Exhibit 40** is a true and accurate copy of Mr. Artman's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application. I expect that this document will be part of the administrative record in this proceeding.

      f.      Robert H. Smith, California Tribal Business Alliance, to Dale Morris, dated October 31, 2008. I am informed and believe that attached to the Appendix of Evidence as **Exhibit 41** is a true and accurate copy of Mr. Smith's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application. I expect that this document will be part of the administrative record in this proceeding.

      g.      Robert Poythress, Madera City Council, to Dale Morris, dated March 7, 2007, May 31, 2009, and June 24, 2011. I am informed and believe that attached to the Appendix of Evidence as **Exhibit 42** is a true and accurate copy of Mr. Poythress's letters, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application. I expect that these documents will be part of the administrative record in this proceeding.

h.      Andrew Souza, Fresno City Manager to Dale Morris, dated March 23, 2009.   I am informed and believe that attached to the Appendix of Evidence as **Exhibit 43** is a true and accurate copy of Mr. Souza's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application.   I expect that this document will be part of the administrative record in this proceeding.

i.      Mayor Ashley Swearengin, City of Fresno, to Dale Morris, dated March 23, 2009.   I am informed and believe that attached to the Appendix of Evidence as **Exhibit 44** is a true and accurate copy of Mayor Swearengin's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application.   I expect that this document will be part of the administrative record in this proceeding.

j.      Various members of Congress to Secretary Salazar, dated November 3, 2009.   I am informed and believe that attached to the Appendix of Evidence as **Exhibit 45** is a true and accurate copy of the letter, which I obtained in the course of my opposition to the Secretary's fee-to-trust transfer.   I expect that this document will be part of the administrative record in this proceeding.

k.      The Madera County Farm Bureau to Secretary Salazar, dated February 2, 2012.   I am informed and believe that attached to the Appendix of Evidence as **Exhibit 46** is a true and accurate copy of the Madera County Farm Bureau's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application. I expect that this document will be part of the administrative record in this proceeding.

l.      United States Representative Jeff Denham to Secretary Salazar, dated February 17, 2011 and October 6, 2011.   I am informed and believe that attached to the Appendix of Evidence as **Exhibit 47** is a true and accurate copy of Congressman Denham's letters, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application.   I expect that these documents will be part of the administrative record in this proceeding.

m.      Senator Feinstein to Secretary Salazar, dated March 9, 2012.   I am

informed and believe that attached to the Appendix of Evidence as **Exhibit 48** is a true and accurate copy of Senator Feinstein's letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application.  I expect that this document will be part of the administrative record in this proceeding.

n.     Various members of the California Legislature to Carl Artman expressing their opposition to the fee-to-trust transfer.   I am informed and believe that attached to the Appendix of Evidence as **Exhibit 49** is a true and accurate copy of the letter, which I obtained in the course of my opposition to the North Fork Tribe's fee-to-trust application. I expect that this document will be part of the administrative record in this proceeding.

21.     Attached to the Appendix of Evidence as **Exhibit 50** is a true and accurate copy of sections 1, 2, and 8 from the 2009 Final Environmental Impact Study prepared by Analytical Environmental Services, the firm hired to prepare the environmental impact study on the Casino Parcel.  I obtained this document on or about July 27, 2010 from the BIA in response to a letter that I sent requesting to be included on a distribution for the National Environmental Policy Act review.  The documents were included on a CD entitled "North Fork Rancheria of Mono Indians, Fee to Trust and Casino/Hotel Project, FINAL Environmental Impact Statement, February 2009."  I expect that this document will be part of the administrative record in this proceeding.

22.     Attached as **Exhibit 51** to the Appendix of Evidence is a true and correct copy of documents that I obtained from the BIA showing that the land for the North Fork Rancheria was purchased in 1916 with funds appropriated by Congress in 1913 pursuant to the Act of June 30, 1913 (38 Stat. 77).  I obtained these documents in the course of my opposition to the North Fork Tribe's fee-to-trust application and I expect that these documents will become part of the agency's administrative record in this proceeding.

### The BIA's Disorganized March 12, 2008 Public Hearing

23.     I attended a public hearing organized by the BIA for the proposed trust acquisition and mega-casino development on March 12, 2008, at the Hatfield Mall, Madera County Fair Grounds.

24.     The BIA was ill prepared to handle the amount of input that could have been given.  To that end, the venue for this hearing was woefully undersized, the hearing did not allow for full public participation and the hearing was conducted in a manner that was clearly biased in favor of mega-casino proponents.

25.     The site selected for the hearing could not accommodate all of the attendees, causing BIA to turn away hundreds of individuals who wanted to participate in the public hearing. In particular, the meeting hall was filled to capacity and I understand that a bus load of Chukchansi tribal members, whom I expect opposed the casino project, was turned away.

26.     Supporters of the mega-casino were provided with reserved seating, while many opponents were locked out of the hearing altogether. Moreover, supporters were permitted to enter the building ahead of all others.

27.     Proponents were given a full opportunity to provide comments in support of the Casino, while opponents were limited to three minutes.

28.     As a result of these irregularities at the public hearing, the significant interest in the proposed action (over 800 people attended or attempted to attend the public hearing) and the length of the Final Environmental Impact Study (four volumes with over 1,000 pages), requests were made for BIA to extend the public comment period beyond the statutory 45-day minimum and to hold additional public hearings.  To the best of my knowledge, BIA denied all such requests.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ⊥⊥ day of January, 2013, at Penryn, California.

Cheryl Schmit

-11-