-446-

# **EXHIBIT 21**

DEIS Comments, North Fork Rancheria's	Page 1	1/1/2009
Hotel/Casino Project

# *Stand Up For California!*
"Citizens making a difference"
standupca.org

P.O. Box 355
Penryn, CA 95663

March 12, 2008

Amy Dutschke
Acting Regional Director
Pacific Regional Office
Bureau of Indian Affairs
2800 Cottage Way
Sacramento, California 95825

RE: "DEIS Comments, North Fork Rancheria's Hotel/Casino Project"

Dear Ms. Dutschke:

*Stand Up For California!* appreciates this opportunity to make comment on the DEIS regarding the issue of North Fork of Mono Indians (Tribe) proposed casino in Madera County. Our organization has concerns about this project establishing a federal precedent on off reservation gaming in California. The Tribes application for fee land into trust is clearly identified as a two part determination accompanied with several inter-governmental agreements which have been negotiated in a commendable manner. The Tribe has adhered to the federal statute, the Indian Gaming Regulatory Act (IGRA) and proceeded in a transparent and collaborative manner.

Nevertheless, several federal policy questions remain particularly in light of Assistant Secretary Carl Artman's Memo of January 3, 2008, *"Guidance on taking off reservation land into trust for gaming purposes"*.

California has unique federal law and unique tribal gaming issues. Tribes in California have 21 pending federal applications for the acquisition of new land for tribal gaming. Twelve (57%) of these applications seek to by-pass the two-part determination before opening new casinos.[1] In addition there are 85 pending applications for 8,361.36 acres of contiguous and adjacent parcels expanding established tribal lands. The described use of the contiguous and adjacent lands is sometimes vague; ambiguously stated or more importantly its use is changed once in trust, often for gaming. Contiguous and adjacent lands meet the exception for gaming on after-acquired lands and should be considered a gaming acquisition.

National and statewide media, local government, state and federal lawmakers are closely watching the decision-makers at the Bureau of Indian Affairs (BIA). As you know, California

---

[1] Pending Land Applications, July 2007, Office of Indian Gaming Management
http://www.standupca.org/Reports/SCAN0237_000.pdf

DEIS Comments, North Fork Rancheria's    Page 2    1/1/2009
Hotel/Casino Project

leads the off-reservation tribal gaming debate because issues of restored landless tribes and reservation shopping by gaming investors are paramount in California. Decision-makers must concern themselves with establishing coherent and consistent policy for after acquired lands constant with the intent of section 20 of the Indian Gaming Regulatory Act (IGRA).

## FEDERAL AND STATE POLICY CONCERNS

As part of this IGRA-mandated process, *Stand Up For California!* has a clear interest in the proceedings and therefore submits comments on these policy issues and will supplement these comments in the future.

- Significant policy concerns over the "Sole Proprietary Interest Requirement".

- Violates the Secretary's Trust Responsibility to other federally recognized tribes
    On Reservation job opportunities and benefits
    Growth of reservations governed by tribal governments

- State and local concerns that need to be given greater weight:
    Jurisdictional problems and potential conflicts of land use; and
    the removal of the land from the tax rolls.

- The Secretary of the Interior has no authority to take this land into trust

- Non-Compliance of State Constitutional Law and Policy

## DISCUSSION

I. **Significant NIGC policy concerns over the "Sole Proprietary Interest Requirement"**

The proposed site on Highway 99, "Subject Land" is not located "within the exterior boundaries of the tribe's reservation or adjacent thereto." The "Tribe" while a federally recognized tribe, has a small land base of 61.5 acres located in the town of Northfork. It appears that the Tribe asserts governmental powers over the land. F. Cohen, Handbook of Federal Indian law at 34-35 (1982 Ed.).

There is nothing in the administrative record to suggest that the Subject Land is located with a tribal consolidation area or that the Tribe already owns an interest in the property. Indeed, as evidence by Madera County Tax Assessor Records the Subject Land is currently owned by Fresno Land Acquisitions LLC C/O Station Casinos, Inc. Att. Accounts Payable 1505 S. Pavilion Center Drive, Las Vegas, Nevada.

The Subject Land is encumbered by the ownership of developer/investor/ proposed management company. Herein lays a potential violation of IGRA's sole proprietary interest requirement. IGRA requires, as one of the necessary conditions for a tribe to open and operate a casino, a gaming ordinance approved by the National Indian Gaming Commission (NIGC). 25

USC Section 2710(b)(B); 2710(d)(1)(A). For approval of a gaming ordinance, IGRA requires, among other things, that "the Indian tribe will have the sole proprietary interest and responsibility for the conduct of any gaming activity."25 USC 2710(b) (2)(A).

As such, should a tribe and a contractor execute an agreement that gives to the contractor some proprietary interest in the gaming operation, the agreement violates both the tribal gaming ordinance and IGRA, which empowers the NIGC to correct those and all other violations through enforcement actions. Therefore, any agreement that violates IGRA's sole proprietary interest requirement places the tribe at risk of fines and closure of its casino.

The evidence of the County records of the Subject Land make clear it is illogical to even consider the Subject Land at this time for a casino development.

## II. Violates the Secretary's Trust Responsibility to other Tribes.

Acquiring the Subject Land for casino gaming purposes would grant the "Tribe" the right to operate a casino in a location that is immediately adjacent to the City of Madera, about 20 miles to the metropolitan area of Fresno and 166 miles to the densely populated bay area. These represent larger metropolitan population centers. Such an urbanized location is easily accessible via Highway 99 and connecting interstate and state highway transportation systems.

Casino gaming on the Subject Land would certainly divert gaming that would otherwise occur at already operating tribal casinos in more remote locations. These tribes did not have the opportunity to select their casino site; rather their casino location was mandated by the location of their historic lands. Moving tribes from their homelands undermines public support for the gaming franchise voters awarded tribes through Proposition 1A in 2000 and violates the pledge made by tribes that gaming would take place only on tribal lands.

The Tribe and Station Casinos are willing to pay the County and State millions upon millions of dollars for this opportunity. Station Casinos has promoted the casino at the Subject Land as the only economic project critical to improving the lives of the Tribe's more than 1340 members.

In 1999, the BIA Tribal Information and Directory indicated there were only 310 members. In 2000 the total increased to 430. The process of enrolling additional members began in December of 1998 the same year that Proposition 5, the first proposition that attempted to legalize Indian gaming in California passed.

If the established Rancheria at North Fork was only allotted to individuals residing on the land in 1983, then who are these new tribal members? It appears *individuals* are heirs or successors in interest whose families relocated many years ago. Have these individuals ever lived on a reservation or experienced tribal life or governance? Where do they live and work now? The purpose of the IRA is to encourage growth of reservations governed by tribal governments. Will these new members return to the reservation? There is no doubt that the Tribe will benefit from gaming revenue. But is this Subject Land acquisition consistent with the intended use of the IRA?

DEIS Comments, North Fork Rancheria's  Page 4  1/1/2009
Hotel/Casino Project

The Rancheria at North Fork is small, isolated in a rural area and basically used for a limited number of homes. It does not appear that revenue would be used to create a significant number of on-reservation job opportunities. Indeed most tribal casinos in California employ 97% non Indians. Gaming revenue is used by California's small tribal populations to diversify tribal holdings into auto dealerships, government buildings for lease, hotels, banks, gas stations, TV/Radio stations, country clubs and golf courses, etc. Clearly the benefit of the casino will be in the form of stipends and other benefits to individual tribal members, not necessarily an enhancement of a reservation governed by tribal government.

### III. State and local concerns that need to be given greater weight:

#### A. Jurisdictional problems and potential conflicts of land use

The County of Fresno was one of the first 27 Counties to be established by the California State Legislature on September 9, 1850. Madera County later annexed from Fresno County in 1893 establishing their own authority and jurisdiction over the Subject Lands. Clearly, the State of California exercised authority and governance over Subject Lands for 114 years before Congress even appropriated money for the purchase of federal fee lands for homeless Indians of no specific tribal affiliation at the North Fork Rancheria.

In other words, in 1958, the unorganized tribal group of the North Fork Rancheria voluntarily relinquished any claim to governance over their lands in Madera County over 50 years ago. Waiting 50 years to restore lands from 1958 to 2008 does not represent one *continuous transaction.*

Clearly, the non tribal population of Madera County in 2000 was 130,000+ persons have justifiable expectations that the Subject Land remains similar in character. If changes regarding zoning, County General Plan, jurisdiction and critical health and safety issues created by a change in the governing authority are to occur—it cannot be made behind closed doors as an overreaching federal decision.

In 1850 California became a State and exercised governance over the Subject Land. Without dispute for 158 years no Indian lands have existed in this regional area at the site of the proposed casino (i.e. all land has been subject to State law and local law). Common sense dictates that it is unreasonable to place a new political entity for the purpose of establishing a casino which enjoys immunity to civil liability and tax exemption that for 158 years has been subject to California and local law and in the private ownership of generations of private citizens.

Moreover, the Subject Land is zoned as ARE 40 – Exclusive 40 ac. rural agriculture. <u>The Madera County General Plan identifies the land as exclusively agriculture</u>. California County General plans seek smart development for all future plans extending commonly 10 years and sometimes more. Counties give significant consideration to shared natural resources such as transportation systems, night sky, air quality and taxpayer provided services inclusive of law enforcement, fire, emergency services, district attorney, municipal jail and many more.

DEIS Comments, North Fork Rancheria's      Page 5      1/1/2009
Hotel/Casino Project

- **A General Plan requires extensive research and a vote by the Board of Supervisors which can be challenged by citizens and businesses of the County.**

It seems self-evident that a massive complex devoted entirely too around-the-clock commercial gambling and complementary diversions for a host of transient visitors is a unique species of development bearing little resemblance to farming, ranching, shopping malls, auto dealerships, office buildings, etc. There must be a discussion of the type and quantity of development that would occur naturally on land zoned ARE 40 not impacted by the *growth accelerating affect of a casino*.

By comparison, in Placer County on June of 2003, the United Auburn Indian Community opened a casino on 58 ac. Five years later, the Tribe is proposing an expansion of 650 rooms, 20 level hotel, a pool and spa, a 3000 seat performing arts center and a convention center complete with a nine story parking garage. However, the land when acquired by the United Auburn Indian Community in 2003 was part of the County General Plan which included an 11,000 ac. Industrial and Commercial development park. *Accelerated growth* was anticipated and well planned for.

### B. Removal of land from the tax roles.

The lost tax revenue must also be evaluated in light of the Tribe's plan to undertake considerable commercial development on the Subject Land. While the lands current tax value has increased significantly even though it remains largely undeveloped, logically the tax value will increase exponentially if the Tribe develops the property on the scale proposed by the application. Additionally, the development and increased usage of all the lands within or near the proposed acquisition, without any incoming property taxes to prevent, mitigate or offset damages to the land, will potentially negatively impact the State and County. While the Tribes Memorandum of Understanding with the County seeks to off set the impacts, it is important to note the included renegotiation provisions that will allow the Tribe to decrease the amount of funding to the county in the event gaming devices are made available to non Indians in the State. The State Legislature currently has legislation to authorize the use of Bingo like slot machines.

As the Tribe and Station Casinos builds and operates its casino, hotel and retail complex in this rural area of the State the development will require a substantial increase in State and County services but the costs of those services will not be paid from property, income or sales taxes generated by or on the Subject Land because it will be exempt.

The Bureau of Indian Affairs must take into consideration the County General Plan, the zoning, and the *accelerated growth* of an around-the-clock development of the proposed site. Moreover, the limit of 2000 machines which was previously offered in tribal state compacts in the year 2000 has increased to 7500 machines in 2008. The DEIS must consider *accelerated growth* to occur projecting an increase to 7500 machines? The DEIS must consider the development of a mega-casino complex and the associated impacts comparable to Foxwoods in Connecticut?

DEIS Comments, North Fork Rancheria's  Page 6  1/1/2009
Hotel/Casino Project

IV. **The Secretary of the Interior has no authority to take this land into trust.**

California has unique federal Indian Law. In 1864, Congress passed "an Act to provide for the better organization of Indian Affairs in California," (the Four Reservations Act) (Act of Apr. 8, 1864, 13 Stat. 39), which provided among other things that:

> "There shall be set apart by the President, and at his discretion, not exceeding four tracts of land, within the limits of (California), to be retained by the United States for the purposes of Indian reservations, which shall be of suitable extent for the accommodation of the Indians of California, and shall be located as remote from white settlements as may be found practicable, having due regard for the purposes for which they are intended."

Thus the Four Reservations Act specially limited the number of Indian reservations the Executive Branch was authorized to create in California. Subsequently, in 1891, Congress provided for the creation of a limited number of additional California reservations in the Mission Indians Relief Act. The Mission Indians Relief Act created an exception to the limit previously set. Therefore the only statutory exceptions to the reservation limit established by the Four Reservations Act are the Mission Indians Relief Act and congressional acts specifically establishing reservations for particular California Indian tribes, none of which are applicable in this instance.

The Indian Reorganization Act does not currently authorize the Secretary to proclaim a new reservation in California. While the IRA authorizes the Secretary "to proclaim new Indian reservations on lands acquired pursuant to any authority conferred by "certain enumerated IRA sections, including title 25 United States Code section 465, we believe Congresses specific restriction on the number of California Indian reservations as set forth in the Four Reservations Act, controls the general reservation proclamation authority given the Secretary under the IRA.

The unambiguous purpose of the Four Reservations Act is to "provide for better organization of Indian Affairs in California." There is no indication in the IRA's plain language or legislative history that by giving the Secretary general authority to proclaim Indian reservations to help rebuild Indian land bases, Congress intended to repeal the limit on the number of Indian reservations in California.

Therefore, the Secretary of the Interior does not have the authority to take land into trust for the creation of a new reservation in California. The North Fork Mono Indians and their gaming investors Station Casinos will need to seek out a Representative of Congress to carry a Congressional Act specifically to take land along highway 99 in Madera County for gaming.

A. **A brief history of the Tribe and unique federal law in California**

The "Tribe" has its historical, archeological, geographical and cultural roots at the North Fork Rancheria, located in North Fork Center, Madera County, South of Bass Lake, and North of O'Neal's in California. Indeed, the federal land at North Fork Rancheria is the basis of the "Tribes" restoration of a terminated Rancheria. The original Rancheria was purchased under the authority of the Act of June 30, 1913 (938 Stat 77, 86) title was in fee for the United States.

Several Appropriations Acts were made between 1906 and 1917 to purchased land for "homeless Indians" in California. The distributes, heirs or successors in interest of the North Fork Rancheria may demonstrate historical, archeological, geographical and cultural roots to 80 acres of land at North Fork.[2]

The Subject Land is not located within or contiguous to the boundaries of the Rancheria of the Tribe in existence on October 17, 1988. On that date the "Tribe" while federally recognized did not have a land base, did not reside on land set aside under the federal protection against other jurisdictions, and did not assert governmental powers over any land. Indeed, the "Tribe" did not become organized until May 12, 1997 when the groups Constitution was approved.

The Tribe never had a recognized "reservation" in, or anywhere near the vicinity of, the Subject Land. Indeed the Tribe's historical lands are located in North Fork Center, nearly 40 miles from the Subject Land.

The 85th *Congress 2d Session* July 22, 1958 Report to accompany H. R. 2824 provided for the distribution of the land and assets of certain Indian Rancherias and Reservation in California. North Fork is a named Rancheria. The report was agreed to be favorable and recommend that the bill be passed. The legislation provided options to, (1) transfer assets of Rancheria properties to individual Indians, (2) or sell the asset and distribute the proceeds to the individual Indians, or (3) convey such assets to the corporation[3] or legal entity organized or designated by the group or 4) convey such assets to the group as tenants in common.

The termination of the North Fork Rancheria became federal statute. The Report identifies the land and its owners:

> The 80 acres making up this rancheria were purchased in 1914 for $550.00. At that time there were an estimated 200 Mono Indians living in this acres. By 1933, however, the number had dropped to a mere 7, and today only a mother and her 2 sons occupy the land as a rural homesite.
>
> The land has a very limited grazing value. It is not used for that purpose. The domestic water is obtained from a spring. The land does not have alien against it because of any improvement. The homesite is about 2 miles from an improved road. The Susan Johnson family has an assignment to the entire 80 acres. There is no approved membership roll for this group.

---

[2] The North Fork Rancheria, 80 acres, is located about two miles from the town of North Fork, Madera County, California. SE1/4NE1/4 Section 20, and SW1/4 Section 21, T. 8 S., R. 23 E., Mount Diablo Meridian. *Tillie Hardwick v. United States of America* C-79-1710 SW Stipulation for entry of judgment (Madera County) Exhibit A page 3 – *see* North Fork

[3] The Regional Office of the Bureau of Indian Affairs used California State Corporation Law to organize tribes as Homeowner Associations in order to distribute federal funds thus providing services or maintenance to the trust lands.

On December 13, 1955, the family asked that they be given fee patent to this acreage with the request that a domestic water system be installed.

The local BIA officials estimated that the following sums would be necessary to effect transfer of tile:

| | |
|---|---|
| Land survey | $1,000.00 |
| Water system | 2,000.00 |
| Legal assistance | 500.00 |
| Property appraisal | 300.00 |
| Programming and Planning | 1,000.00 |
| Total | $4,800.00 |

In 1923, the Reno Indian Agency ("Agency") had jurisdiction over Indian reservations, colonies, villages and scattered bands of homeless Indians in Nevada and Northern California not under the superintendence of any other jurisdiction. The Agency and its entire personnel gave considerable time surveying and compiling date on populations, locations and needs of the various Indian reservations, colonies, villages and scattered bands of homeless California Indians as presented in tits annual report of 1923.

The 1923 records of the Agency indicate approximately 519 Indians; comprising 8 groups were actually residing in Madera County, California. North Fork is listed as the largest Indian community in Madera County. Their holdings are very scattered and few have taken advantage of the land purchased near North Fork for a home site. Only four families reside on the 80 areas. <u>The Agency has determined that no additional land is needed for these Indians.</u>

The Tribe had its federal recognition status re-established in 1983 as the result of a stipulated judgment under class action suit *Tillie Hardwick v. United States*, C-79-1910SW. Judgment filed December 22, 1983. The Tribe's Rancheria termination occurred in 1958, 50 years ago on land nearly 40 miles from the Subject Land.

The North Fork Mono Indians restoration to federal recognition in 1983, the individually owned lands restored to trust and now the casino market land acquisition efforts are independent of each other and not part of one ***continuous transaction***. There is not a sufficient "temporal relationship" between any restoration and the proposed lands acquisition to meet an exception for restored lands for a mandatory acquisition of land for gaming.

- **Thus, the application to take land into trust must be and is being processed as a two-part determination.**

  **B.**     **Misapplication of Federal Statute**

As previously detailed the Tribal lands were terminated in 1958 by a Congressional Act, the Tribe was only restored to federal recognition by a court stipulated judgment in 1983, 49 years after the enactment of the Indian Reorganization Act (IRA).

The court entered without making its own finding a stipulated judgment strictly restoring Rancheria lands to their status prior to the termination. Rancherias are land bases and were not tribal governments. The parties to the Stipulation were individuals residing on Rancheria land. No tribal government was ever a party involved in any litigation or any of the stipulations. **If there is a stipulation, the court does not render a decision.**

Nonetheless, the Pacific Regional Office of the BIA misapplied and later treated these stipulated judgments as restoration of federal status of tribal governance. We have neither a court nor administrative finding based on evidence to support restoration of tribal governance. Therefore, the misapplication of the stipulation lacks any basis and does not satisfy Congressional statutes. (See PL No. 103-454, Section 103(3) requiring recognition by act of Congress, requiring CFR 25 Part 83 review or decision by a court)

This single action by the Pacific Regional Office in moving land base groups to federal recognition has and continues to cause havoc in California for both the tribal and non tribal populations. This action has initiated the proliferation of off-reservation gaming and stirred the flames of public backlash.

### V.     Non-Compliance of State Constitutional Law and Policy

As you may be aware, the State has successfully defended a challenge to the constitutionality of Proposition 1A[4], which challenge alleged that California violated the Equal Protection Clause of the United States constitution when it permitted Indian tribes to conduct class III gaming on Indian lands, to the exclusion of all others. *Artichoke Joe's*, supra, 353 F. 3d at 731. In upholding Proposition 1A, the Ninth Circuit Court of Appeals relied upon the State's restriction of tribal gaming "*to carefully limited locations*" as a reasonable means of serving the State's interest in protecting the public health, safety, welfare and good order.

> **A.    Does the proposed site of the Tribes casino/hotel complex meet the State's Constitutional restriction of tribal gaming "*to carefully limited locations*"?**

It would not appear so, as the State Constitutional exception provided for limited gaming *only* on "California Indian lands". Article 4 Section 19 (f) authorized by a vote of the public on March 7, 2000, clearly limits tribal gaming operations to "*Indian lands in California*" or "*tribal lands subject to those compacts*". California had 52 negotiated and ratified tribal state compacts that were subject to this language when authorized by the voters in 2000. North Fork was not one of the 52 compacts nor was the Subject Land Indian Lands or subject to those compacts.

> **B.    Does the proposed casino location meet the criteria of the Gubernatorial Proclamation dated May 18, 2005?**

---

[4] Proposition 1A provided for a limited exception for federally recognized Indian Tribes on California Indian Lands in the States prohibition on Casino style gaming. This statewide ballot measure was supported by 64% of California voters on March 7, 2000.

In May of 2005 Governor Schwarzenegger introduced a Proclamation setting forth a general policy on specified matters related to tribal gaming. It is important to note here, that the Tribe had negotiated with the County prior to the Governor's Proclamation. It is clear that the Subject Land proposed for a casino by the Tribe is non-compliant with this Proclamation. The Governor will:

1. **I shall oppose proposals for the federal acquisition of lands within any urbanized area where the lands sought to be acquired in trust are to be used to conduct or facilitate gaming activities.**

2. **I shall decline to engage in negotiations for tribal-state gaming compacts where the Indian tribe does not have Indian lands eligible for class III gaming.**

3. **I shall consider requests for a gubernatorial concurrence under section 20(b)(1)(A) of IGRA, that would allow a tribe to conduct class III gaming on newly acquired land, only in cases where each of the following criteria is satisfied:**

    a) **The land that is sought for class III gaming is not within any urbanized area.**

    b) **The local jurisdiction in which the tribe's proposed gaming project is located supports the project.**

    c) **The tribe and the local jurisdiction demonstrate that the affected local community supports the project, such as by a local advisory vote.**

    d) **The project substantially serves a clear, independent public policy, separate and apart from any increased economic benefit or financial contribution to the State, community, or the Indian tribe that may arise from gaming.**

The governor makes clear his opposition to urban casinos but also details criteria under which he will give serious consideration for the authorization of off reservation casinos.

The proposed Subject Land if approved through a two part determination process must meet the detailed criteria of the proclamation for gaming or it will undermine the State Constitutionality of California's Indian gaming regime and 2005 Gubernatorial Proclamation.

The Governor has stated very clearly in his Proclamation that:

"**I shall oppose proposals for the federal acquisition of lands within any urbanized area where the lands sought to be acquired in trust are to be used to conduct or facilitate gaming activities.**"

Yet the Subject Land is just outside but in the sphere of influence of Madera, a city of about 50,000 residents. Attached to the Governors Proclamation is a definition of *urbanized areas* which consists of any City over 20,000 in population:

"For purpose of this Proclamation, "urbanized area" means the definition of that term as defined in Public Resources Code section 21071, subdivision (a). A list of the cities meeting this definition as of the date of this Proclamation is attached hereto."

On March 29, 2005 Supervisor Gary Gilbert, Chairman of the Madera County Board of Supervisors advised State Senator Dean Florez, Chairman of the Governmental Organization Committee of the County's support of the North Fork project for the following reason:

"**The Board supports the North Fork Memorandum of Understanding because of the tremendous economic boost it can provide our community. We represent an area with an unemployment rate which is consistently more than double the state average and with agriculture based economy in need of diversification. The North Fork project is expected directly to generate an estimated 1500 permanent good paying jobs and 700 construction jobs, and indirectly another 2100 jobs. These are significant numbers for any county, but particularly for the 130,000 residents of our rural county.**"[5]

As stated, the only reason for supporting the Tribes casino proposal at the Highway 99 location is jobs and financial contributions to the State and County which is contrary to the Governor's Proclamation of May 18, 2005. Clearly there is no "**independent public policy separate and apart from any increased economic benefit or financial contribution to the State or County**".

### d) The project substantially serves a clear, independent public policy, separate and apart from any increased economic benefit or financial contribution to the State, community, or the Indian tribe that may arise from gaming.

While the County has conducted a fully transparent public process with two well publicized and attended meetings concerning a proposed Memorandum of Understanding (MOU) and voted as a Board to support the MOU it does not appear that California's long standing public policy of permitting a public vote was utilized. Thus, again the proposed project at the Highway 99 site appears contrary to the Governor's Proclamation of May 2005.

### c) The tribe and the local jurisdiction demonstrate that the affected local community supports the project, such as by a local advisory vote.

Citizens in California enjoy a very direct form of democracy permitting voters to assert their right to referendum local and state laws. This process has been recently used in California on a statewide effort regarding four 2006 tribal state compacts. However, it is more commonly put to use at the local level of government to referendum local actions, particularly gambling expansion. The most recent and successful referendum was conducted in the City of Dixon in 2007, which defeated the introduction of a new Horse Racing Track.

---

[5] Please note the date of Supervisor Gilbert's letter is almost two months prior to the Governor's Proclamation setting the criteria on whether or not he would give consideration to an off reservation gaming facility.

The State has long recognized the opposition of citizens to the expansion of gambling and has included in California Business and Professions Code Section 19961. (a)[6] The following language related to gambling expansion.

> "**On or after the effective date of this chapter any amendment to any ordinance that would result in an expansion of gambling in the city, county or city and county shall not be valid unless the amendment is submitted for the approval of voters of the city, county or city and county, and is approved by a majority of the electors voting thereon.**"

Because of the potential for backlash in the local community, the need for citizen input has been recognized as important for Indian gaming, even though there is no process in IGRA that contemplates it. Consequently, in some states, like California, a mechanism for a non binding advisory vote by the local community on proposed tribal gaming activities was developed as part of the compacting process. In 1998 California governor Pete Wilson included a non binding advisory vote in the "Pala Compact". The advisory vote feature was not included in the 1999 compacts signed by Governor Gray Davis, but was restore as stated in Governor Schwarzenegger's May 18, 2005 Proclamation and as negotiated in his new compacts with Indian tribes.

Advisory votes have the potential to assist Counties and Cities in the development of local intergovernmental agreements with tribes that are seeking off reservation casinos or the expansion of existing casinos on established and historic Indian reservations. A no vote by the local community, while non binding may trigger the need to renegotiate a tribal county agreement, force a search for means to mitigate local adverse impact, defuse local opposition or to build public support for a project.

***Stand Up For California!*** **urges a vote of the public consistent with long standing public policy on gambling, before the BIA makes a controversial determination for transferring land into trust for a two part gaming acquisition.**

## CONCLUSION

### A. It is about the MONEY!

California is the fastest growing and will soon be the largest gambling state, but we lack both a coherent gambling policy and adequate regulation. With $60 billion worth of casino gambling expansion just approved and billions more recently promised by the Governor on the

---

[6] This language was developed in 1998 in the California Gambling Control Act. The Preamble of the Act succinctly states the States position on the gambling industry. 19801. The Legislature hereby finds and declares all of the following: (a) The longstanding public policy of this state disfavors the business of **gambling**. State law prohibits commercially operated lotteries, banked or percentage games, and **gambling** machines, and strictly regulates pari-mutuel wagering on horse racing. To the extent that state law categorically prohibits certain forms of **gambling** and prohibits **gambling** devices, nothing herein shall be construed, in any manner, to reflect a legislative intent to relax those prohibitions. ....This continues through (m). The State voters, did provide a *limited exception* for tribal gaming in 2000.

campaign trail, <u>there is serious speculation that the Station Casinos/North Fork project is included in the promised billions of dollars</u>. Our States desperate budget deficit and cash strapped cities and counties are in need of revenues. Gambling dollars provide significant opportunities to many others than just the economic self reliance of tribal governments.

- **The Indian Gaming Regulatory Act did not guarantee or mandate all tribes the economic opportunity for the development of a gaming facility.**

Our organization does not view this Subject Land acquisition for gaming as an appropriate use of the Indian Reorganization Act. Nor do we view it as consistent with the Governor's Proclamation or the intent of State Constitutional language, Article 4 Section 19 (f). Approval of land at this site for Station Casinos[7] and the Tribe sets an unwanted precedent creating a questionable federal policy on two part determinations. **Secretary of the Interior Dirk Kempthorne stated while in Las Vegas, "...the 1988 Indian Gaming Regulatory Act was never intended to create casinos, and therefore jobs for tribal members, so far from the reservation."[8]**   I will take that one step further:

"Clearly, IGRA was not enacted to create casinos, jobs and revenues for non tribal governments. Nor was the intent of IGRA to make wealthier already rich gaming investors who seek to establish new and emerging jurisdictions for gaming expansion." Cheryl Schmit.

- **A standard to strive for, both a state and federal model for two-part determination exists in California with the Fort Mojave Tribe in the City of Needles.**

Clearly the non-tribal populations of the City of Madera, County of Madera, County of Fresno and surrounding regional areas have justifiable expectations that the land remains similar in character. *Stand Up For California!* has no objection to the purchase of these lands by the Tribe for economic development <u>if they remain fee land</u>. However, transferring fee land into trust grants the tribe governmental control over these lands now and into perpetuity. This creates a disruptive and practical consequence to the surrounding areas which are populated by non Indians. (130,000+). Transferring the Subject Lands into trust creates a mix of state and tribal jurisdictions which burden the administration of state and local government and aversely affect landowners neighboring the tribal lands.

*Stand Up For California!* appreciates the opportunity to submit the foregoing comments and trusts that the Secretary will give noteworthy consideration to our organizations concerns over the development of federal policy and the setting of precedents that may have unintended consequences in California. As noted above, these comments may be supplemented in due course. If you have any questions regarding these comments, please let me know.

---

[7] Station Casinos has agreed to a management led takeover to be acquired by a private-equity group, Fertitta Colony Partners LLC. Stations Casinos is promoting two additional controversial projects, Graton Rancheria near the City of Rohnert Park and Mechoopda Maidu in Butte County. Litigation over land acquisitions has been promised in both areas.

[8] WITI – TV Las Vegas (AP) March 9, 2008, *Tribes Challenge Federal Ruling Over Off Reservation Casinos* http://www.myfoxmilwaukee.com/myfox/pages/News/Detail?contentId=5983019&version=1&locale=EN-US&layoutCode=TSTY&pageId=3.3.1

| | | |
|---|---|---|
| **DEIS Comments, North Fork Rancheria's Hotel/Casino Project** | Page 14 | 1/1/2009 |

Sincerely,

Cheryl Schmit – director
*Stand Up For California!*
916-663-3207
schmit@hughes.net
www.standupca.org

CC: Honorable Dirk Kempthorne-Secretary of the Interior
Fax: 202-208-6956
David Bernhardt – Solicitor of the Interior
Fax: 202-208-5584
James E. Cason – Associate Deputy Secretary of the Interior
Fax: 202-208-1873
Carl Artman – Assistant Secretary of Indian Affairs
Fax: 202-208-5320
George T. Skibine – Acting Deputy Principal Assistant Secretary for Indian Affairs
Fax: 202-273-3153
Phil Hogen – Chairman, National Indian Gaming Commission
Fax: 202-632-7003