# **EXHIBIT 22**

# *Stand Up For California!*
## "Citizens making a difference"
www.standupca.org

P.O. Box 355
Penryn, CA 95663

September 7, 2010

Dale Morris, Regional Director
Bureau of Indian Affairs
Pacific Region
2800 Cottage Way
Sacramento, CA. 95825

**RE: FEIS Comments, North Fork Rancheria's Hotel/Casino,
Fee to Trust Acquisition Project**

Dear Director Morris:

*Stand Up For California!* has previously submitted comment on the proposed off reservation gaming facility of the North Fork Mono Indians of Madera County. Our organizations concerns are about this project establishing a federal precedent on off reservation gaming in California. The Tribe's application for fee land into trust is clearly identified as a two-part determination accompanied with several inter-governmental agreements.. The Tribe has adhered to the federal statute, the Indian Gaming Regulatory Act and proceeded in a transparent and collaborative manner.

**Nevertheless, several significant policy questions remain.**

**I. Gubernatorial Concurrence:** The Off Reservation gaming policy is purely at the discretion of the Governor. This authority is an 'executive exercise'. Our State is about (70 days or so) to elect a new Governor. Both candidates have stated they are opposed to off reservation gaming.

Our organization has commented often on the necessity of a governor to establish objective criteria for the exercise of his/her executive power for concurrence of an off reservation casino in agreement with the Secretary of the Interior. Criteria must include evidence of public comment received and public debate engaged in of the affected communities and local governments at large. Gubernatorial concurrence must not be abused by local governments.

In this instance, there appeared to be a disproportionate influence created by the influx of investor dollars from Station Casinos of Nevada. The influence of the political contributions is of particular concern to our organization, with respect to potential corruption of the political processes and public policy at all levels of government. Thus, *Stand Up For California!* wishes to bring to your attention, one such action that was prosecuted by the Fair Political Practices Commission (FPPC). The FPPC did prosecute and fine Councilmember Svanda, yet the fine,

does not fully address the impact the prior action has had on the integrity of the decision-makers in Madera County and at the State level.

> Briefly: Councilmember Svanda, as an elected representative in the City of Madera, accepted payments to travel outside of the State of California to testify in Washington, D.C. on May 22, 2008 on behalf of a special interest, Station Casinos, with off reservation casino development plans in the area.. The Councilmember was not authorized by the City or the County to testify before Congress on their behalf. Councilmember Svanda's FPPC Form 700 Schedule E filed for the period Jan 1, 2008 to Dec. 31, 2008 does not report the gift of airfare, hotel or other incidentals while lobbying on Station Casinos behalf.
>
> Additionally, Councilmember Svanda headed up a business group paid for by Stations and the North Fork Tribe. The web site of the business group is paid for by Station and North Fork. This makes the conflict issue even more complicated and brings to light new concerns for consideration as to the undue influence gaming money may have had on this controversial project in the Madera area.

**II. The proposed Subject Land if approved for gaming has the potential to undermine the constitutionality of California's Indian gaming regime.** As you may be aware, the State has successfully defend a challenge to the constitutionality of Proposition 1A, which challenge alleged that California violated the Equal Protection Clause of the United States constitution when it permitted Indian tribes to conduct class III gaming on Indian lands, to the exclusion of all others. *Artichoke Joe's*, supra, 353 F. 3d at 731. In upholding Proposition 1A, the Ninth Circuit Court of Appeals relied upon the State's restriction of tribal gaming *"to carefully limited locations"* as a reasonable means of serving the State's interest in protecting the public health, safety, welfare and good order.

Is the subject land a *carefully limited location*? No. IGRA did not guarantee or mandate all tribes the economic opportunity for the development of a gaming facility. The North Fork has trust lands that qualify for gaming. Are these lands as marketable as the proposed site on Highway 99, of course not. Allowing this tribe to leap-frog over all others that have established gaming on their Indian lands while adhering to IGRA is simply unfair and not what the voters agreed to.

**III. The proposed Subject Land if approved for gaming will undermine the sovereign authority of tribal governance.** In a letter dated January 10, 2010, the Honorable Nelson Pinola, Tribal Chairman of the Manchester-Point Arena Band of Pomo Indians alerts fellow tribal leaders of a pending BIA action that he believes poses a very serious and immediate threat to tribal government gaming. "I believe that if we allow the strong clear, historical, governmental and cultural connection between our land and our sovereignty to be broken we are playing into the hands of the enemies of tribal sovereignty. Their arguments will be strengthened by a BIA decision to simply create sovereign authority over any land that looks good for a business."

**IV. The propose Subject Land if approved for gaming will disenfranchise the electorate.** A majority of the California public (64% in 2000) initially supported tribal gaming as an anti-poverty strategy; voters now appear increasing restless about the direction of the tribal gaming industry. This is due mostly to off reservation gaming proposals or tribes and their gaming investors abusing the "restored lands exception" in IGRA.

The recent Court ruling on the *Rincon* case in conjunction with the Assistant Secretary Larry Echo Hawks denial of the Habematolel Pomo of Upper Lake further muddies the waters. The "Rincon Rule" is a mixed bag as negotiating Compacts will become more complicated if the Governor decides that there is little reason to be generous in making concessions for which a tribe can generate only limited financial concessions to apply to the states' universal budget woes.

The Upper Lake compact denial letter presents a conundrum. Clearly, an approved compact for an off reservation casino on highway 99 presents a meaningful concession to which the Tribe is not already entitled. But, if Secretary of the Interior will not permit revenue sharing, *what then is the justification for California's tribal monopoly?*

More importantly, voters did not agree to off reservation gaming in their authorization of Proposition 1A. The electorate was promised tribal casino gaming would occur only on established Indian lands. Approval of this project will further fuel a public backlash to tribal gaming.

**Conclusion:** *Stand Up For California!* **opposes this acquisition.**
Our organization does not view this acquisition for gaming as an appropriate use of the Indian reorganization Act. The local agreements appear to have been driven by our States desperate budget deficit and cash stripped cities and counties in need of revenues.

Station Casinos, a Las Vegas based gambling company appears to have gone tribe shopping. The company recruited the North Fork Rancheria located in the Sierra foothills to be their partner. Station Casinos then went reservation shopping for a marketable gaming location. If approved by Interior, Station Casinos will receive 25% of the revenues generated by the casino under a management contract they have signed with the North Fork Rancheria.

This project appears to be about MONEY, for a gaming investor, local governments and the State. It is not about the spirit and intent of the Indian Reorganization Act or the Indian Gaming Regulatory Act.

Sincerely,

Cheryl Schmit – Director
916-663-3207
cherylschmit@att.net
www.standupca.org