IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STAND UP FOR CALIFORNIA!, et al., | Civil Action No. 1:12-cv-02039-BAH |
| Plaintiffs, | Honorable Beryl A. Howell |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | Consolidated Case |
| Defendants. | |

**PLAINTIFF PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS' MEMORANDUM ADDRESSING ISSUES RAISED BY PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Picayune Rancheria of the Chukchansi Indians ("Picayune Tribe") respectfully submits this memorandum to address certain issues raised by the Motion for Preliminary Injunction filed in these consolidated cases by Plaintiffs Stand Up for California!, Randall Brannon, Madera Ministerial Association, Susan Stjerne, First Assembly of God-Madera, and Dennis Sylvester (the "Stand Up! Plaintiffs").  In particular, the Stand Up! Plaintiffs' Motion for Preliminary Injunction argues that the Defendants violated the Administrative Procedure Act ("APA") and Indian Gaming Regulatory Act ("IGRA") by deciding to take approximately 305 acres of land in Madera County, California (the "Madera Site") into trust on behalf of the North Fork Rancheria of Mono Indians ("North Fork Tribe") for gaming purposes without giving proper consideration to the devastating economic impact that the North Fork Tribe's competing, off-reservation casino will have on the Picayune Tribe's existing, on-reservation casino.  Stand Up! Compl. (Dec. 19, 2012) ¶¶ 63-70.  As this is one of the issues raised by the Picayune Tribe's Complaint, *see, e.g.*, Picayune Compl. (Dec. 31, 2012) ¶ 25, the Picayune Tribe respectfully

1

submits this memorandum addressing the likelihood of success on the merits of this argument in order to aid the Court in its consideration of the Stand Up! Plaintiffs' Motion for Preliminary Injunction.[1]

## I. REGULATORY HISTORY

In March 2005, the North Fork Tribe submitted a request to the Department of the Interior to acquire the Madera Site in trust for the purpose of operating an off-reservation casino/hotel resort.  Record of Decision, Secretarial Determination Pursuant to the Indian Gaming Regulatory Act for the 305.49-Acre Madera Site in Madera County, California, for the North Fork Rancheria of Mono Indians, Summary at 1 ("IGRA Decision"), attached hereto as Exhibit A.  The Madera site is located approximately 36 miles from the North Fork Tribe's existing 80-acre reservation and approximately 30 miles from the Picayune Tribe's existing, on-reservation casino.  Ex. A at 54, 81.

On September 1, 2011, then-Assistant Secretary for Indian Affairs Larry Echo Hawk signed a Record of Decision to "issue a Secretarial two-part determination pursuant to the Indian Gaming Regulatory Act for the Madera site for the North Fork Rancheria of Mono Indians." *Id.* at 89.  Subsequently, on November 26, 2012, Assistant Secretary for Indian Affairs Kevin Washburn signed a Record of Decision to "acquire the Madera site in trust for the North Fork Rancheria of Mono Indians pursuant to the Indian Reorganization Act."  Record of Decision, Trust Acquisition of the 305.49-acre Madera site in Madera County, California, for the North Fork Rancheria of Mono Indians, at 63 ("IRA Decision"), attached hereto as Exhibit B.  The IRA

---

[1] The Picayune Tribe's Complaint also identifies other errors in the decision to take the Madera Site into trust, including the Defendants' failure to give adequate consideration to the North Fork Tribe's lack of a demonstrated historical connection to the Madera Site and the ineffective gubernatorial concurrence of California Governor Edmund G. Brown, Jr.  As these arguments are not raised in the Stand Up! Plaintiffs' Motion for Preliminary Injunction, however, they are not addressed in this memorandum.

Decision was wholly dependent on the earlier IGRA Decision, and concludes that the IRA and its implementing regulations were satisfied through compliance with 25 C.F.R. § 151.3(a)(3), because the proposed casino/casino resort complex makes trust acquisition of the Madera Site "necessary to facilitate tribal self-determination and economic development." *Id.* at 53.  Finally, on December 3, 2012, the Department of Interior published in the Federal Register a notice of its final agency determination to acquire the Madera Site in trust for the North Fork Tribe pursuant to the Indian Reorganization Act (the "IRA Notice") 77 Fed. Reg. 71611, 71611 (Dec. 3, 2012).

The Picayune Tribe timely filed a complaint in this Court challenging the IGRA Decision and the IRA Decision on December 31, 2012.  The Court consolidated the Picayune Tribe's lawsuit with the above-captioned matter on January 9, 2013.  Jan. 9, 2013 Minute Order.

## II.    LEGAL STANDARDS

To prevail on a motion for a preliminary injunction, a plaintiff must demonstrate, *inter alia*, a substantial likelihood of success on the merits.  *See Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009).  The D.C. Circuit has held that "[a]n injunction may be justified . . . where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  *Id.* (internal citations omitted).  Here, there is a particularly strong likelihood of success on Plaintiffs' claim that Defendants violated the APA and IGRA and by failing to properly consider the devastating economic impacts that the North Fork Tribe's proposed, off-reservation casino will have on the Picayune Tribe's existing, on-reservation casino, in violation of 25 U.S.C. § 2719(b)(1)(A) and 25 C.F.R. §§ 292.2, 292.18(f), and 292.21.

IGRA's implementing regulations require that in evaluating an application for gaming on newly-acquired lands, the Secretary must "consult with nearby Indian tribes" regarding potential impacts to tribes on their "services, housing, community, character [and] economic development,

income, and employment . . . ." 25 C.F.R. §§ 292.2 and 292.19. "[I]f an Indian tribe qualifies as a nearby Indian tribe under the distance requirements . . . the detrimental effects to the tribe's on-reservation economic interests will be considered." 73 Fed. Reg. 29354, 29356 (May 20, 2008). Although the Department of the Interior's regulations generally limit its consideration of "nearby Indian tribes" to a 25-mile radius from the proposed gaming facility, "a nearby Indian tribe located beyond the 25-mile radius may petition for consultation if it can establish that its governmental functions, infrastructure or services will be directly, immediately and significantly impacted by the proposed gaming establishment." *Id.* at 29357; 25 C.F.R. § 292.2.

### III. THE DEFENDANTS FAILED TO GIVE PROPER CONSIDERATION TO THE DETRIMENTAL EFFECT OF THE PROPOSED CASINO ON THE PICAYUNE TRIBE

Department of Interior Assistant Secretary Larry Echo Hawk correctly determined that the Picayune Tribe qualified for consideration as a "nearby Indian Tribe beyond the 25-mile radius" because the Picayune Tribe operates its on-reservation Chukchansi Gold Casino "approximately 39 miles from the Site," Ex. A at 77, and had established that its "governmental functions, infrastructure or services will be directly, immediately and significantly impacted by the proposed gaming establishment." *Id.* at 85-86. The Assistant Secretary was thus "compel[led]" to consider any potential impacts on the Picayune Tribe notwithstanding the 25-mile limitation, due to the "reality of the economics of class III gaming, tribal government service delivery, and tribal interests in land." *Id.* at 85.

The Assistant Secretary did not dispute that the Picayune Tribe would lose substantial revenue as a result of the proposed casino, that this loss of revenue would cause job losses at the Picayune Tribe's casino, that it would "preclude the Tribe from issuing per capita payments to its citizens," or that the Picayune Tribe's "government programs will be cut or eliminated due to the loss of revenues." *Id.* at 86.

4

Nevertheless, the Assistant Secretary arbitrarily accorded a "diminished weight" standard in considering these undisputed harms to the Picayune Tribe. *Id.* at 85.  This was erroneous.  It was improper for the Assistant Secretary to accord anything other than full weight to the demonstrated adverse impacts that the proposed casino/hotel resort complex would have on the Picayune Tribe's economic interests simply because it is more than 25 miles from the Madera Site.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider").  While it may be true that the adverse economic impact on a tribe operating an existing on-reservation casino "will naturally diminish as the distance between their jurisdictions and the proposed off-reservation gaming site increases," Ex. A at 86, it certainly does not follow that the *weight* accorded to those detrimental economic impacts under IGRA must also diminish once they are proven.  It is an arbitrary and capricious form of double-counting to further discount that undisputed harm simply because the Picayune Tribe's casino is more than 25 miles from the proposed casino/hotel resort complex.

Proceeding from the faulty reasoning that the Picayune Tribe's proven harms were due less than full consideration, the Secretary then discounted entirely the devastating loss of revenue that Picayune would suffer from the proposed casino, concluding that "[t]he proposed Resort would not be detrimental to . . . the Picayune Rancheria." *Id.* at 84.  He incorrectly determined, as a matter of law, that competition-based harm is *per se* not a cognizable detrimental impact: "[C]ompetition from the Tribe's proposed gaming facility in an overlapping gaming market is not sufficient, in and of itself, to conclude that it would result in a detrimental impact to Picayune." *Id*.

5

This, too, was erroneous. IGRA and its implementing regulations required the Assistant Secretary to consider "the detrimental effects to the [Picayune] tribe's on-reservation economic interests," 73 Fed. Reg. 29354, 29356 (May 20, 2008), including adverse effects on the Picayune Tribe's ability to deliver "services, housing, community, character [and] economic development, income, and employment" to its members. 25 C.F.R. §§ 292.2 and 292.19. It is undisputed that the proposed casino/hotel resort complex will have precisely such detrimental effects on the Picayune Tribe. To ignore those effects entirely simply because they are the result of "competition" is arbitrary, capricious, and without basis in law or common sense. Indeed, under this reasoning, even a loss of revenue sufficient to destroy reliance interests and potentially jeopardize ongoing operations entirely would be insufficient to constitute "detrimental impact." The Picayune Tribe risks such harms given the close proximity of the proposed casino to the population centers that Picayune must draw from at a distance to remain viable, yet the Assistant Secretary "entirely failed to consider [this] important aspect of the problem" based on a factor – whether the economic harm is competition-based or not – that Congress "has not intended it to consider." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

The Assistant Secretary's failure to consider the detrimental economic impact to the Picayune Tribe was not only arbitrary and capricious, it was completely inconsistent with his consideration of other competition-based economic impacts elsewhere in the very same Record of Decision. For example, in explaining why one alternative site – the "HUD Tract" – was unsuitable, the Assistant Secretary explained that "[t]he draw to the facility would likely be . . . limited by the proximity of three existing tribal gaming facilities within 20 miles of the town of North Fork." Ex. A at 5. In other words, competition-based economic impacts on the North Fork Tribe's proposed casino were sufficient cause to reject one possible site, but devastating

6

competition-based economic impacts on the Picayune Tribe's existing casino were entitled to no weight at all. Later on the same page, the Assistant Secretary explains that another possible site – the "Avenue 7 and Avenue 9 Properties" – was rejected because:

> [T]he [North Fork] Tribe was concerned about the impact a development there would have on the gaming operations of neighboring tribes, particularly the Picayune Rancheria and Table Mountain Rancheria. The operations of both tribes draw heavily from the northeast Fresno and Clovis markets. The tribe was concerned that those patrons would be attracted by the short travel distance to a new development at Avenue 7.

*Id.* Apparently, competition-based economic impacts to the Picayune Tribe's existing casino are entitled to consideration – indeed, they are given decisive weight – only when raised by the North Fork Tribe; when raised by the Picayune Tribe, the same competition-based economic impacts are deemed legally irrelevant.

Finally, the Assistant Secretary correctly recognized that to be "[c]onsistent with the scheme established by IGRA," he was required to "apply heavy scrutiny to tribal applications for off-reservation gaming on lands acquired after October 17, 1988," so as "to avoid upsetting the intent of Congress, which favors tribal gaming on existing and former reservations, and on lands acquired in trust prior to October 17, 1988." *Id.* at 82. He was also correct to observe that "IGRA favors on-reservation gaming over off-reservation gaming," and that "[t]he Department will not approve a tribal application for off-reservation gaming where a nearby Indian tribe demonstrates that it is likely to suffer a detrimental impact as a result." *Id.* at 86. The Assistant Secretary's use of a "diminished weight" standard and his categorical refusal to take account of competition-based economic harms raised by the Picayune Tribe violate these settled principles of law and policy. In this, too, the Assistant Secretary's IGRA Decision was arbitrary and capricious.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs are likely to succeed on their claim that the Secretary violated IGRA by failing to properly consider the magnitude of the detrimental economic impacts on the Picayune Tribe, in contravention of 25 U.S.C. § 2719(b)(1)(A) and 25 C.F.R. §§ 292.2, 292.18(f), and 292.21.  The IGRA Decision was thereby arbitrary, capricious, an abuse of discretion, and issued in a manner not in accordance with law, 5 U.S.C. § 706(2), and the Stand Up! Plaintiffs' Motion for Preliminary Injunction should be granted.

DATED this 11th day of January 2013

Donald R. Pongrace (D.C. Bar #445944)

By: */s/ Merrill C. Godfrey*
Merrill C. Godfrey (D.C. Bar #464758)
James E. Sherry (D.C. Bar #500797)
Catherine E. Creely (D.C. Bar #982539)
Jessica A. Fitts (D.C. Bar #1011182)
AKIN GUMP STRAUSS HAUER & FELD
1333 New Hampshire Avenue N.W.
Washington, DC  20036
(202) 887-4000
(202) 887-4288 (facsimile)
mgodfrey@akingump.com

*Attorneys for Plaintiff Picayune Rancheria of the Chukchansi Indians*