**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STAND UP FOR CALIFORNIA!, et al., | |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | Civil Action No. 1:12-cv-02039-BAH |
| | Consolidated with: |
| Defendants. | Civil Action No. 1:12-cv-02071-BAH |
| | Honorable Beryl A. Howell |
| PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, | |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

## STAND UP! PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE

## MOTION FOR STAY OF LITIGATION AND PARTIAL REMAND

In response to plaintiffs' amended complaint and their request that Clean Air Act

("CAA") documents be added to the administrative record, defendants filed a motion to remand

to provide an opportunity for the agency to comply with the CAA. Defendants' motion is

tantamount to a concession that the final trust decision is invalid because the Secretary failed to

comply with the CAA. Plaintiffs respectfully submit that since the final trust decision is currently

subject to judicial review in this Court, defendants have two options for dealing with the CAA

deficiency: the Secretary may rescind the trust decision and move to dismiss the pending case as

moot, or she may defend the final decision and suffer the Court's judgment on its legality. But

the Secretary may <u>not</u> take a litigation time-out to return the action to the agency to modify or amend her final decision while this Court retains jurisdiction. A voluntary remand while the Court retains jurisdiction is improper for several reasons.

First, as dictated by the doctrine of finality, either the Court or the agency has jurisdiction, but both cannot simultaneously have jurisdiction. If the trust decision is final, it is properly before the Court on a timely challenge. If the decision must be modified or amended, it is not final and is not properly before the Court.

Second, the relief that federal defendants seek is inconsistent with the APA, which requires that an agency render a final decision, announce it to enable interested parties to challenge the decision, and certify an administrative record that forms the factual bases for judicial review of the challenged decision. Defendants' requested litigation time-out does not afford existing plaintiffs the opportunity to reformulate their challenge based on new actions and facts, precludes any challenge by new plaintiffs that might wish to challenge a modified or amended decision, and leaves unclear what factual record the Court has before it to conduct judicial review

Third, the Administrative Procedure Act ("APA") presumptively mandates that a reviewing court "shall" "set aside" an agency action that has been found to be "not in accordance with law," or that was adopted "without observance of procedure required by law." 5 U.S.C. § 706. The presumptive mandate is not overcome in this case because even under the *Allied-Signal* test, the failure of the agency to follow the notice requirements of the CAA is a serious deficiency, and vacatur of the decision and unwinding of the fee-to-trust transfer, which the federal defendants characterized eight months ago as a "*mere* transfer of title," will not cause an unduly disruptive impact.

Fourth, the fix that defendants propose is incompatible with the EPA's conformity determination regulations, which require the conformity determination to utilize the latest planning assumptions and emissions estimation techniques, and which contemplate that notice of

the draft conformity determination to the agencies and tribes will be given at the same time as notice to the public – not two years later.

Thus, plaintiffs request that the Court deny the federal defendants' motion and require federal defendants to choose between withdrawing their decision or defending it in the forthcoming motions for summary judgment. If the Court grants the federal defendants' motion, however, then at a minimum the Court should require the defendants to withdraw and re-do the entire conformity determination to ensure that it complies with the current standards as expressed in the regulations. Any remand must also require that the agency comply with *all* notice provisions of the regulations, including those under 40 C.F.R. § 93.156.

## I.
## STATEMENT OF FACTS

### A.   Plaintiffs' Review of the Administrative Record and Amended Complaint Alleging Clean Air Act Violations

Plaintiffs filed their original complaint with this Court on December 19, 2012. [Docket 1.][1] On April 26, 2013, federal defendants lodged the administrative record, containing 41,211 pages of documents. [Docket 51.]

Upon preliminary review of the record, it became apparent to the plaintiffs that the administrative record did not contain several documents required to demonstrate that the agency complied with the CAA's conformity determination and regulations. [Declaration of Sean M. Sherlock ("Sherlock Decl."), ¶ 3.] On May 16, 2013, plaintiffs' counsel sent a letter to the counsel for the federal defendants identifying specific documents missing from the administrative record. [Sherlock Decl., ¶ 4, Exhibit ("Ex.") B.] Plaintiffs' request included the following documents, casting doubt on whether the federal defendants complied with the CAA:

1.   Madera County Transportation Commission traffic model, explicitly referenced in the Final Environmental Impact Statement ("FEIS").

---

[1] On May 3, 2013, this Court set the briefing schedule for this action. [Minute Order of May 3, 2013.] Under this schedule, plaintiffs must submit their opening brief by October 1, 2013, and the final brief in this action will be submitted by the defendants by December 31, 2013. [Minute Order of May 3, 2013.]

2.      Complete copy of North Fork Tribal Resolution 11-26. A copy of the first page of this resolution is included in the record at AR 39225.

3.      Notice of draft conformity determination. *See* 40 C.F.R. § 93.155(a).

4.      Notice of final conformity determination. *See* 40 C.F.R. § 93.155(b).

5.      Copy of advertisement in local newspaper providing notice of final conformity determination. *See* 40 C.F.R. § 93.156(d).

On June 11, 2013, plaintiffs sent a follow-up letter, again requesting that the above documents be included in the administrative record. [Sherlock Decl., ¶ 5, Ex. C.] Counsel for the federal defendants responded on June 12, 2013, by agreeing to supplement record item numbers 2, 3, 4, and 5 above. [Sherlock Decl., ¶ 6, Ex. D.]

On June 14, 2013, plaintiffs sent another letter outlining the legal basis and reasoning for including item number 1 above. [Sherlock Decl., ¶ 7, Ex. E.] Counsel for the federal defendants responded on July 2, 2013 by agreeing to supplement the record with items 1, 2, 3, 4, and 5, above. [Sherlock Decl., ¶ 8, Ex. F.] Counsel did not, however, commit to a date by which the record would be supplemented.

Based partly on documents that were omitted from the administrative record, on June 12, 2013, plaintiffs also filed a motion for leave to file their First Amended Complaint. [Docket 54.] Plaintiffs' First Amended Complaint included a new cause of action alleging that the federal defendants violated the CAA by, among other things, failing to comply with the notice provisions of 40 C.F.R. § 93.155. [*Id.*]

**B.      The Federal Defendants' Request for Stay and Remand**

More than two and a half months after plaintiffs' initial request that the administrative record include the notices required under the CAA, on July 31, 2013, counsel representing the federal defendants notified all parties that the federal defendants "have not been able to locate the documents showing that notice of the draft and final conformity determinations were sent to the specified entities in 40 CFR § 93.155." [Sherlock Decl., ¶ 9, Ex. G.] Counsel informed the

parties that the federal defendants will "move the court to stay this litigation for 90 days and to remand to the Fed Defendants so that this procedural deficiency can be addressed." [*Id.*]

Counsel attached the declaration of Kevin Bearquiver, Deputy Regional Director of the Bureau of Indian Affairs – Pacific Regional Office (the "BIA-PRO"). [Docket 63-2.] Mr. Bearquiver has served as the Deputy Regional Director of the BIA-PRO since June 2011. [Docket 63-2, ¶ 1.] Mr. Bearquiver states that the BIA-PRO and its subcontractor have "extensively searched [their] records," but have been "unable to locate the required notices of the Draft and Final Conformity Determinations under 40 C.F.R. § 93.155(a) and (b)." [Docket 63-2, ¶ 11.] Mr. Bearquiver concludes that "it is impossible for the BIA-PRO to determine whether the documents were sent to the required parties in May and June of 2011." [Docket 63-2, ¶ 12.] To remedy this procedural defect, Mr. Bearquiver further states that the "BIA-PRO *believes* it will take ninety days for the agency to comply with 40 C.F.R. § 93.155(a) and (b) on remand." [Docket 63-2, ¶ 14 (emphasis added).] Mr. Bearquiver does not explain whether the BIA-PRO will consider the comments it receives in response to the notices or whether the BIA-PRO contemplates revising, amending or supplementing the project's environmental impact statement or records of decisions.

## II.
## DEFENDANTS VIOLATED THE CLEAN AIR ACT

**A.    The Clean Air Act and Air Quality in the San Joaquin Valley Air Basin**

The CAA establishes a joint state and federal program for regulating our nation's air quality. The Act is "Congress's response to well-documented scientific and social concerns about the quality of the air that sustains life on earth and protects it from . . .degradation and pollution caused by modern industrial society." *Delaware Valley Citizens Council for Clean Air v. Davis*, 932 F.2d 256, 260 (3d Cir. 1991).

In essence, the CAA requires the EPA to set standards for safe outdoor air called National Ambient Air Quality Standards ("NAAQS") for various pollutants. 42 U.S.C. § 7409. The EPA designates areas that fail to attain NAAQS as nonattainment areas. *Id*. § 7407(d)(1). Based on the

severity of the pollution problem, nonattainment areas are further divided into five categories: marginal, moderate, serious, severe, and extreme. *Id.* § 7511. Central California's San Joaquin Valley has been designated as an ***extreme*** nonattainment area for the pollutant ozone. *See generally Sierra Club v. U.S. E.P.A.*, 671 F.3d 955, 958 (9th Cir. 2012).

Not surprisingly, the "extreme" nonattainment status reflects overall poor air quality in the valley. The ill-effects of these air pollutants on the citizens of the valley are well-documented, and cause respiratory illnesses, cardiovascular diseases and even death.[2] As an official from the EPA recently noted, "[f]our times more people die in the San Joaquin Valley from air pollution than they do from traffic fatalities…If we had a tornado that swept through the Valley and 200 people died, it would be a huge national crisis. We have literally thousands of people dying from air pollution, but it's invisible. You just don't see those people."[3]

**B.    The BIA Violated the Clean Air Act's Reporting Regulations**

1.    Reporting Requirements for Federal Conformity Determinations

Under Section 176(c)(1) of the CAA, federal agencies that "engage in, support in any way or provide financial assistance for, license or permit, or approve any activity" must demonstrate that such actions do not interfere with state and local plans to bring an area into attainment with the NAAQS. *See* 42 U.S.C. §7506(c). The Act further requires that "[t]he assurance of conformity to such an implementation plan shall be *an affirmative responsibility* of the head of such department, agency, or instrumentality" (emphasis added).

Regulations adopted by the EPA require that when a federal agency makes a conformity determination, it "must follow the requirements in §§ 93.155 through 93.160…." 40 C.F.R. § 93.154. Under these procedures, the agency must provide a 30-day notice to the EPA Regional Office, state and local air quality agencies, any federally-recognized Indian tribal government in

---

[2] *See generally, Ground-level Ozone: Health Effects*, United States Environmental Protection Agency, *available at* http://www.epa.gov/airquality/ozonepollution/health.html

[3] Alex Breitler, *EPA Plan Keeps Valley Front, Center*, Recordnet.com, Jan. 25, 2012*, available at* http://www.recordnet.com/apps/pbcs.dll/article?AID=/20120125/A_NEWS/201250326&cid=sitesearch. A copy is provided as Exhibit H to the Declaration of Sean M. Sherlock.

the nonattainment or maintenance area, and affected federal land managers. 40 C.F.R. § 93.155(a). The notice must describe the proposed action and the federal agency's draft conformity determination. 40 C.F.R. § 93.155(a). The regulations also require that the agency place notice of the draft conformity determination by prominent advertisement in a daily newspaper of general circulation, and allow 30 days for written public comment on the proposed action. 40 C.F.R. § 93.156(b). Within 30 days of making the final conformity determination, the federal agency must also provide notice to the same designated parties and the public. 40 C.F.R. §§ 93.155(b), 93.156(d).

During this notice and comment period, the agency "*must* consider comments from any interested parties." 40 C.F.R. § 93.154 (emphasis added). Moreover, the agency "*must* document its response to *all* comments received…and make comments and responses available." 40 C.F.R. § 93.156(c) (emphasis added). EPA recommends that public participation under the CAA be conducted at the same time as the National Environmental Policy Act's ("NEPA") requirements. *See Determining Conformity of General Federal Actions to State or Federal Implementation Plans*, 58 Fed. Reg. 63214, 63234 (Nov. 30, 1993) ("The EPA agrees that Federal agencies should consider meeting the conformity public participation requirements at the same time as the NEPA requirements.").

2.    BIA Violated the Notice Regulations

Without explicitly admitting that they violated the CAA, the federal defendants claim that they have "no documentation to establish that they complied with one of the two regulations requiring the notice to be provided of the draft and final conformity determinations." [Docket 63, p.1.] It is "impossible" for the agency to prove that the required notices were sent. [Docket 63-2, ¶ 12.]

An agency's failure to comply with statutory or regulatory notice requirements necessitates that the agency's action be held unlawful and set aside. 5 U.S.C. § 706(2)(A, D); *see e.g.*, *Sierra Club v. Johnson*, 436 F.3d 1269, 1280 (11th Cir. 2006) (vacating the EPA's decision refusing to object to state's issuance of Title V permit when state failed to comply with notice

requirement under the CAA); *Anchustegui v. Department of Agriculture*, 257 F.3d 1124 (9th Cir. 2001) (Forest Service's cancellation of grazing permit invalid due to government's failure to follow notice procedure).

The attached declaration of Dan Casas of the Table Mountain Rancheria further establishes that the BIA did not comply with the notice provisions of 40 C.F.R. § 93.155, and that its failure to comply deprived a recognized tribe the opportunity to comment on the draft conformity determination. [Declaration of Dan Casas of Federally Recognized Table Mountain Rancheria ("Casas Decl."), ¶ 6.] Table Mountain Rancheria, a federally-recognized tribe[4] that is within the San Joaquin Valley Air Basin, did not receive a notice of the draft or final conformity determination. [Casas Decl., ¶¶ 5, 6, 7.] Because of the BIA's failure to provide notice, the Table Mountain Rancheria was not able to comment on the agency's conformity determination. [Casas Decl., ¶¶ 7, 8, Ex. A.] Thus, the BIA's error was material and prejudicial.

### III.
### VACATUR OF THE RODS IS THE PROPER REMEDY FOR THE SECRETARY'S ADMITTED FAILURE TO FOLLOW THE CLEAN AIR ACT

**A.**     **The APA Presumptively Mandates Vacatur of Agency Actions That Are Without Observance of Procedure Required by Law**

The APA expressly mandates that a reviewing court "shall" "set aside" agency action that has been found to be "arbitrary, capricious, an abuse of discretion, or not in accordance with law," or that was adopted "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A),(D). The federal defendants fail to acknowledge the "imperative 'shall,'" *Bennett v. Spear*, 520 U.S. 154, 175 (1997), let alone explain how it can be reconciled with their counterintuitive argument that the BIA's failure to comply with mandates of the CAA regulations, 40 C.F.R. § 93.155, can be rectified by after-the-fact notices. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case.").

---

[4] *See Indian Entities Recognized and Eligible To Receive Services From the Bureau of Indian Affairs*, 77 Fed. Reg. 47868 (Aug. 10, 2012) (listing Table Mountain Rancheria as a federally-recognized tribe).

In this circuit, while vacatur has not been deemed mandatory in every case where a plaintiff prevails on an APA claim, it is likewise well-established that vacatur is indeed the "normal" relief for a clear APA violation. *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001).[5]

Importantly, the D.C. Circuit Court of Appeals has made clear that when a reviewing court finds that agency regulations have been adopted in violation of the law, the "ordinary result is that the rules are vacated," with "no separate need to show irreparable injury." *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C. Cir. 1989)); s*ee also, Advocates for Highway Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005) ("[U]nsupported agency action normally warrants vacatur."); *Am. Bioscience*, 269 F.3d at 1084 ("whether or not appellant has suffered irreparable injury, if it makes out its case under the APA, it is entitled to a remedy," which "normally will be a vacatur of the agency's order").

Under the APA, procedural defects are treated no differently than substantive errors. As noted by this this district:

> [T]here is no distinction between procedural and substantive deficiencies under the APA. *See* 5 U.S.C. § 706. Regardless of whether or not an agency action is declared substantively unlawfully, 5 U.S.C. § 706(2)(A), or procedurally flawed, 5 U.S.C. § 706(2)(D), the APA provides for the same remedy: "The reviewing court shall ... hold unlawful and set aside [the] agency action," 5 U.S.C. § 706.

*Hawaii Longline Ass'n. v. National Marine Fisheries Service*, 281 F. Supp. 2d 1, 26 (D.D.C., 2003); *see also, Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1031 n. 27 (D.C. Cir. 1978) ("[W]e cannot be sure that under the correct procedures the Agency would have reached the same conclusion.").

---

[5] It should be noted that other circuits have refused to allow remand without vacatur in *any* instances. *See e.g., Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 2013 WL 1163426 at *11 (E.D. Pa. Mar. 21, 2013) ("Importantly, neither the Supreme Court nor the Third Circuit has held that the APA permits a court to remand an invalid regulation without first vacating the regulation.").

It could hardly be clearer, therefore, that in accordance with the plain language of 5 U.S.C. § 706, vacatur is the presumptive remedy for any APA violation. *Am. Bioscience*, 269 F.3d at 1086; *see also Checkosky v. SEC*, 23 F.3d 452, 454 (D.C. Cir. 1994).

**B.      Temporary Remand Without Vacatur is Improper**

By seeking leave to fix their incomplete and inadequate record, federal defendants treat the APA's "finality" requirement as having little significance. They are wrong to do so. The APA requires that a court may only review a "final agency action." *See* 5 U.S.C. § 704. To be "final" in the context of the APA, the Supreme Court requires that the action must mark the "consummation" of the agency's decision making process and the action "must be one by which rights or obligations have been determined,' or from which 'legal consequences will flow." *Bennett*, 520 U.S. at 177-78 (internal citations omitted). The two records of decisions at issue in this case are the "consummation" of the federal defendants' decision-making process through which federal defendants definitively determined the rights and/or obligations of the Tribe, plaintiffs and any other challengers. *Bennett*, 520 U.S. at 177–78; 25 C.F.R. § 2.6(c).[6]

When a district court assumes jurisdiction over an appeal of a final agency decision, the agency's authority over the decision is divested. *See Doctors Nursing & Rehabilitation Ctr. v. Sebelius*, 613 F.3d 672, 677 (7th Cir. 2010). For instance, in *Doctors Nursing*, the district court dismissed a case after an agency re-opened its administrative proceedings. *Id.* at 674-75. The court of appeals reversed and remanded, holding that once judicial review of final agency decision begins, an agency may not unilaterally reopen its administrative proceedings because to do so would divest the court of its jurisdiction. *Id.*, at 677-78. The panel noted that "when one tribunal properly takes a case on appeal, the inferior tribunal transfers authority over the case." *Id.* (*citing Gao v. Gonzales*, 464 F.3d 728, 729 (7th Cir. 2006). Moreover, unlike the statute at

---

[6] The first decision, made on September 1, 2011 pursuant to the Indian Gaming Regulatory Act ("IGRA"), determined that the Tribe is permitted to conduct gaming under the so-called Secretarial Determination, 25 U.S.C. § 2719(b)(1)(A). [*See* Docket 42, p. 2.] The second decision, made on November 26, 2012, pursuant to the Indian Reorganization Act ("IRA"), approved the Tribe's fee-to-trust application. [*Id.*]

issue in *Doctors Nursing*, the APA contains no provision allowing the government to reopen administrative proceedings after judicial review begins. *Id*., at 677.

Only six months ago in this Court, the Secretary's attempt to "fix" an inadequate record mid-stream was denied in another Indian trust decision where the Secretary filed a motion for a voluntary remand to amend a final trust decision. *Conf. Tribes of the Grand Ronde Comm. of Or. v. Salazar and Cowlitz Indian Tribe* (*Cowlitz*), 11-cv-00384 and 11-cv-00278. [Declaration of Benjamin S. Sharp ¶ 3, Ex. K.]; *see also Land Acquisitions; Cowlitz Indian Tribe*, 78 Fed. Reg. 26802 (May 8, 2013).

In *Cowlitz*, Judge Roberts denied the Secretary's motion for remand and ordered the Secretary to inform the Court within thirty days whether he would rescind the trust decision or defend it with an opposition brief. [Ex. K, p. 4-5.] The Secretary amended the final trust decision and filed an opposition brief defending the amended decision. [Ex. K, p. 5.] The case was then transferred to Judge Rothstein. [Ex. K, p. 6.] Plaintiffs filed motions to strike defendants' "supplemental record of decision" and the Court dismissed the case as moot and remanded the matter to the agency. [Ex. K, p. 6.] The Court's opinion states:

> To allow the Federal Defendants to unilaterally change the 2010 ROD would run afoul of the APA's limits on administrative review and undermine this Court's jurisdiction. Under the APA, a district court may not review an agency decision until it is final. *American Petroleum Institute v. EPA.*, 683 F.3d 382, 386 (D.C. Cir. 2012). The APA finality requirement serves a critical purpose. It preserves the proper role of federal courts under Article III by ensuring that courts do not review tentative agency decisions, preventing courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[ing] the agencies from judicial interference" in an ongoing decision-making process. *Id*. at 386; *Panvano v. Shalala*, 95 F. 3d 147, 150 (2d Cir. 1996) ("Parties are generally required to exhaust their administrative remedies, in part because of concerns for separation of powers"). It is for this reason that once a district court assumes jurisdiction over an appeal of a final agency decision, the agency's authority over the decision is divested. *See Doctors Nursing & Rehabilitation Center v. Sibelius*, 613 F.3d 672, 677-78 (7th Cir. 2010) (stating that an agency may not divest a district court of jurisdiction simply by reopening and reconsidering a final agency decision). Accordingly, this Court finds that the Federal Defendants did not have the authority to supplement the 2010 ROD with the 2012 Revised Initial Reservation Decision.

[Ex. K, p. 10.]

Similarly with this case, if the Secretary wishes to fix the final trust decision by complying after-the-fact with the CAA, she must rescind the trust decision and seek dismissal of the case, or defend the final decision to judgment. But she has no authority to amend, modify or supplement the prior final decision while this Court is exercising its jurisdiction to review the challenged final trust decision.

The *Cowlitz* case also demonstrates a second reason to reject federal defendants' requested voluntary remand. In *Cowlitz*, the Secretary issued a new final decision and published that decision in the Federal Register, and then certified a new administrative record which added documents not in the original record. *See Land Acquisitions; Cowlitz Indian Tribe*, 78 Fed. Reg. 26802 (May 8, 2013). Plaintiffs reviewed the new final decision and, on June 6, 2013, filed complaints within the regulatory period that were different from their original complaints. *Conf. Tribes of the Grand Ronde Comm. of Or. v. Jewell et.al.* (13-cv-00849); *Clark Cnty, Wash. et. al. v. U.S. Dep't of Interior et.al.* (13-cv-00850). The new cases received a new docket number and a new litigation schedule. *Id*. These steps are required by the process under the APA, and they preserve the rights and duties of the parties and the Court for judicial review of administrative action. Giving the agency a chance to amend its final decision while the Court retains jurisdiction does not.

The federal defendants have already issued their final records of decision and certified their administrative record of proceedings in this action, and this Court has taken jurisdiction over plaintiffs' challenges to those decisions. Now that plaintiffs have revealed federal defendants' error, the federal defendants ask this Court to put this litigation on hold while they re-open the administrative process to fix their admittedly incomplete and inadequate decisions. But the temporary relief sought is incompatible with the APA's mandate that courts review only final agency action, and that they "shall" "set aside" agency action that has been found to be "arbitrary, capricious, an abuse of discretion, or not in accordance with law," or that was adopted "without observance of procedure required by law." 5 U.S.C. §§ 704, 706(2)(A); 706(2)(D); s*ee also Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012) ("Ongoing agency review renders

an agency order non-final and judicial review premature."). Thus, this motion should be denied and federal defendants should be required to choose between withdrawing their decisions or defending this action on the existing record. Like any litigant, the federal defendants should not be given a do-over to correct the errors disclosed by plaintiffs without suffering the legal consequences of those errors.

Even under the *Allied-Signal* test, remand without vacatur is not justified. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-151 (*citing International Union, UMW v. FMSHA*, 920 F.2d 960, 966–67 (D.C. Cir. 1990). Under that test, in determining whether vacatur is proper, the court weighs (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and (2) "the disruptive consequences" of the vacatur. *Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002) (*quoting Allied-Signal,* 988 F.2d at 150-151).

1.    <u>Violation of the Clean Air Act's Notice Regulations Require Vacatur</u>

There is no doubt but that the federal defendants violated the Clean Air Act. Reporting and public participation are integral to the CAA's regulations to ensure that federal actions do not increase the severity of existing violation or delay timely attainment of standards in the area of concern. *See* 40 C.F.R. § 93.150 *et. seq*. In promulgating the public participation regulations, the EPA noted:

> These procedures allow the public the opportunity to examine information used in the applicability calculations and draft conformity determination, to question the draft determination, to review others' comments, and, after the final determination, to use legal means, if necessary, to influence the project.

*Determining Conformity of General Federal Actions to State or Federal Implementation Plans*, 58 Fed. Reg. 63214, 63234 (Nov. 30, 1993).

Federal courts have also consistently held that violations of the CAA's notice requirements are not harmless. For example, in *Sierra Club v. Johnson*, King Fishing sought a Title V permit under the CAA for its plant in Georgia. 436 F.3d 1269, 1280 (11th Cir. 2006). The Georgia Environmental Protection Division published notice of the permit in a local

newspaper, but failed to create a mailing list that is required under notice procedures of 40 C.F.R. § 70.7(h)(1). *Id.* at 1273. The court of appeals reversed the EPA's denial of plaintiff Sierra Club's petition that the EPA object to the King Fishing permit. *Id.* at 1274-5. The court held that "EPA abused its discretion and acted arbitrarily and capriciously when it failed to object to the King Finishing permit based on Georgia EPD's failure to comply with the mailing list requirement set out in 40 C.F.R. § 70.7(h)(1)." *Id.* at 1280.

As the Third Circuit has noted, when an agency violates public participation requirements, "a court promotes neither the agency's ultimate mission nor respect for the law by ignoring the agency's indiscretion or condoning the agency's shortcut." *State of New Jersey v. Dep't of Health & Human Servs.*, 670 F.2d 1262, 1281 (3d Cir. 1981); *see also U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 210 (5th Cir. 1979) (EPA's failure to afford opportunity for notice and comment was not cured by its acceptance of comments after the effective date of the designations).

Courts have also almost uniformly rejected post-hoc justifications that contradict agencies' former positions as expressed in formal regulations. *See, e.g., Paralyzed Veterans of Am. v. D.C. Area L.P.*, 117 F.3d 579, 586 (D.C. Cir. 1997). This case should be no different. Contending that its failure to follow the public participation requirement amounts only to harmless error is always a tenuous legal argument. *See, e.g., Sugar Cane Growers,* 289 F.3d at 96 ("an utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure"); *Gerber v. Norton,* 294 F.3d 173, 175 (D.C. Cir. 2002) (court rejects a harmless error argument); *see generally Federal Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case – even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason").

In accordance with these cases, the BIA's failure to follow the mandates of the CAA regulations is a serious deficiency. At least one federally recognized tribe was deprived of this

opportunity and states that it would have extensively commented upon the inadequacy of the conformity determination. [Casas Decl., ¶¶ 6, 7, 8(i)-8(vi).] On remand, the BIA *must* not only "consider comments from any interested parties," but also "*must* document its response to *all* comments receive." 40 C.F.R. § § 93.154, 93.156(c) (emphasis added); *see also McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C. Cir. 1988) ("Consideration of comments as a matter of grace is not enough."). Therefore, under the first *Allied-Signal* factor, remand without vacatur is inappropriate.

2.      Vacating the Secretary's Flawed Decisions Would Not Cause Disruption

The federal defendants fail to explain how vacatur of their decisions and unwinding the fee-to-trust transfer, which they characterized as a "*mere* transfer of title" eight months ago, will cause unduly disruptive impact. [Docket 30, p. 40 (emphasis added).] This is not a case, such as the one in *Sugar Cane Growers*, where "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante." 289 F.3d at 97.

Previously in this litigation and in response to plaintiffs' motion for preliminary injunction, the federal defendants stated that the fee-to-trust transfer was a "mere transfer of title" that could be unwound if this Court were to so order. [Docket 30, p. 40; *see also* Transcript of Hearing Held On January 25, 2013 ("Transcript"), at 10, 35, 36, 40, 42, 58, 76.][7] At oral argument on that motion, the federal defendants assured this Court that the North Fork tribe was proceeding "with their eyes wide open." [Transcript, at 43.] In denying plaintiffs' motion for preliminary injunction, this Court noted that it "sees no cognizable limit to its jurisdiction that would preclude an order vacating the trust transfer in this case after the transfer has already been made." [Docket 42, p. 48.] Central to the Court's determination was the government's repeated assurances to the Court, "both in its briefs as well as at oral argument, that 'the Department of the Interior will take the land out of trust if ordered to do so by the Court.'" [Docket 42, p. 48 (quoting the federal defendants)] Having successfully persuaded the Court that the fee-to-trust

---

[7] Copies of pages 35 through 57 of the transcript from the January 23, 2013, hearing are provided as Exhibit J to the Declaration of Sean M. Sherlock.

transfer was a "mere transfer of title" that could be undone, the federal defendants cannot now contend that doing so would be too burdensome or "unduly disruptive." [Docket 30, p. 40.]

Furthermore, in opposing plaintiffs' motion for preliminary injunction, the Tribe assured the Court it was far from ready to break ground on the construction. [Docket 33, p. 40.] Pursuant to that assurance, this Court's January 29, 2013, order required that the Tribe "during the pendency of this case, provide all parties and the Court with a notice at least 120 days prior to any physical alteration of the Madera Site…." [Docket 41.] As of now, plaintiffs have not received any such notice, and it does not appear that construction of any sort has begun. *See also* 25 C.F.R. § 559.2(a) (requiring the Tribe to notify the National Indian Gaming Commission "at least 120 days" before opening gaming facility).

The Tribe will undoubtedly offer self-serving statements to the effect that vacatur would jeopardize its financial investment and interfere with its ability to move forward with financing, planning, construction, etc. Such a position disrespects the CAA by presuming that the conformity determination is no more than a formality, and that the government's re-approval of the conformity determination is a foregone conclusion. *See e.g., Center for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 953 (N.D. Cal. 2010) (in considering whether equity warrants remanding without vacatur, "it is not clear that economic consequences is a factor the Court may consider in environmental cases"); *Natural Res. Def. Council v. U.S. E.P.A.*, 676 F. Supp. 2d 307, 316-317 (S.D.N.Y. 2009), 676 F. Supp. 2d 307, 316-317 (S.D.N.Y. 2009) (no disruption caused by vacatur where applicant stood to lose $90 million invested, because applicant made its investment before making its application, and without any guarantee of approval).

The mere assertion by the federal defendants that vacatur will cause disruption necessarily implies that federal defendants have already made up their mind even before re-noticing the draft conformity determination and evaluating the comments they will receive. *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C. Cir. 1988) ("Of course it is true that defects in an original notice may be cured by an adequate later notice [] but that curative

effect depends on the agency's mind remaining open enough at the later stage….Consideration of comments as a matter of grace is not enough."); [*see also* Casas Decl., ¶¶ 5, 6, 7, Ex. A.]

In effect, the government is asking this Court to temporarily turn a blind eye to an illegal condition – the transfer of land into federal trust in violation of the Clean Air Act – and to countenance a perfunctory effort to cure the violation. *See Natural Res. Def. Council*, 676 F. Supp. 2d at 317 ("The fact that [applicant] has already begun reaping the rewards of the outcome of a flawed regulatory process does not prevent [the agency's decision] from being vacated . . .").

Indeed, allowing the agency to issue perfunctory notices without vacatur two years after the conformity determination will impair the agency's ability to be open-minded in properly addressing comments during the Mulligan process that the government proposes. 40 C.F.R. § 93.158(d) ("Any analyses required under this section must be completed, and any mitigation requirements necessary for a finding of conformity must be identified *before* the determination of conformity is made." (emphasis added)); *see also Advocates for Highway and Auto Safety v. Fed. Highway Admin.*, 28 F.3d 1288, 1291 (D.C. Cir. 1994) (stressing the importance of the "requirement that the parties be able to comment on the rule while it is still in the formative or 'proposed' stage to ensure that the agency maintains a flexible and open-minded attitude" ).

C.      **The Cases Cited By the Federal Defendants Do Not Support Remand Without Vacatur in This Case**

*Pub. Serv. Comm'n of the Dist. of Columbia v. F.C.C.*, 906 F.2d 713 (D.C. Cir. 1990), cited by the government, is not on point. In that case, petitioner filed a petition for review of a Federal Communications Commission (FCC) order approving a revised "separations manual,"[8] on the ground, among others, that the FCC failed to give an adequate notice of its action under the APA. *Id.*, at 715. The court denied the petition on the ground that the notice was adequate. *Id.*, at 717-18. Thus, the case did not involve a stay of litigation and temporary remand without vacatur.

---

[8] The "separations manual" is a manual required to be adopted by the FCC through rulemaking procedures to be used by telephone companies to divide their costs of service between federal and state jurisdictions for ratemaking purposes. *Id.*, at 715.

In *Ethyl Corp. v. Browner*, 989 F.2d 522 (D.C. Cir. 1993), cited by the government, plaintiff filed a petition for review in the Circuit Court of Appeals to challenge the EPA's denial of petitioner's application for a waiver under the Clean Air Act, allowing use of a fuel additive. *Id*., at 523. After filing the petition, and in the course of settlement discussions, petitioner provided EPA with additional data not before EPA at the time of its decision, which caused EPA to wish to reconsider its denial. *Id*., at 523-24. EPA moved the court to remand the matter to it for further consideration based on the new data. Petitioner opposed the remand, arguing that EPA's unlawful denial should result in the automatic grant of the waiver, because the statute provides that if EPA does not act on the application within 180 days, the application for waiver is deemed granted. *Id*., at 524. The court held that the statute's automatic issuance provision only applies where EPA has failed to act within 180 days, and does not extend to mistaken denials. *Id*., at 524. Thus, *Ethyl Corp.* involved the circumstance very different from that in this case, in which the agency had denied a petition, but wished to retract its denial for purposes of considering new evidence not available at the time of its decision. Unlike the EPA's denial of the application in *Ethyl Corp.*, which merely maintained the status quo, the government's illegal grant of the North Fork Tribe's application, in violation of the Clean Air Act, has resulted in real world consequences – i.e., the removal of land from state and local jurisdiction.

In *Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002), petitioners filed a complaint against the government challenging its adoption of a payment-in-kind program for sugar producers, without having followed the APA's notice and comment procedures. *Id*., at 91. The district court granted summary judgment in favor of the government, and the court of appeals reversed and remanded. *Id*., at 91. In considering the appropriate remedy, the court reasoned:

> Normally when an agency so clearly violates the APA, we would vacate its action . . . and simply remand for the agency to start again. Unfortunately, because we denied preliminary relief in this case, the 2001 program was launched, and *crops were plowed under*. The egg has been scrambled and there is no apparent way to restore the status quo ante.

*Id*., at 97 (emphasis added).

Here, by contrast, this Court took precautions in ruling upon plaintiffs' motion for preliminary injunction to ensure that the egg would not be scrambled. Based on assurances from the government and the tribe that the "mere" title transfer could be easily unwound, and that construction of the casino was years away, this Court ordered that the Tribe notify the parties at least 120 days in advance of any planned construction activities. [Docket 41.] No such notice has yet been given. Moreover, the court in *Sugar Cane* recognized that it was at least possible that on remand the agency could establish good cause to justify the lack of notice. *Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d at 98. No such possibility exists in this case.

In *AFL-CIO v. Chao*, 496 F. Supp. 2d 76 (D.D.C. 2007), plaintiff sued the government challenging the validity of a rule re-enacted without notice and comment after an earlier version of the rule had been successfully challenged in court. *Id.*, at 78. The district court granted plaintiff's motion for summary judgment, and vacated the rule. *Id.*, at 93. Although the government urged the court – as it does here – to remand without vacating the rule, the court found vacatur appropriate under the *Allied Signal* test. *Id.*, at 91-92.

The federal defendants distinguish *AFL-CIO v. Chao* on the basis that the *AFL-CIO* court found that vacatur would not cause significant disruption. Yet the federal defendants fail here to provide anything more than bald assertions that vacatur will cause significant disruption. As mentioned above, the government and the Tribe previously assured this Court that the fee-to-trust transfer could be easily unwound, and that construction of the casino was years away. [Transcript, at 51, 56; Docket 33, p. 40.] Moreover, the court in *AFL-CIO v. Chao* considered that "the risk of disruption posed by invalidating a union reporting requirement does not even approach the risk posed by an order nullifying an environmental or health regulation central to public safety." *AFL-CIO v. Chao*, 496 F. Supp. 2d at 92. In this case, we have land that, as a result of the government's illegal transfer into trust, has been removed from state and local jurisdiction, police power, and state and local health and safety laws.

Furthermore, what the government did not discuss in its motion is that the court in *AFL-CIO v. Chao* also based its judgment on a finding that the government's failure to comply with

the APA's notice and comment requirements was a serious deficiency. *AFL-CIO v. Chao*, 496 F.

Supp. 2d at 91. The court noted that "while the absence of notice and comment is not a

substantive infirmity that mandates vacatur, it nonetheless constitutes a procedural error of

sufficient gravity for the court of appeals to have opted for vacatur recently and with some

regularity." *Id.*, at 91 (citations omitted). Similarly in this case, the government's violation of the

Clean Air Act's notice requirement is a serious deficiency. *See e.g.*, *Sierra Club v. Johnson*, 436

F.3d at 1280.

Finally, the government improperly quotes from *Ford Motor Co. v. N.L.R.B.*, 305 U.S.

364 (1939). In its quotation from that case, the government substitutes "[the agency]" in place of

"the Labor Relations Board," as if the Supreme Court's opinion is applicable to any agency.

*Compare* Federal Defendants' Memorandum, p. 7, *with Ford Motor Co. v. N.L.R.B.*, 305 U.S. at

373. In fact, the Supreme Court's statement is properly limited to the Labor Relations Board,

because the statute at issue in that case expressly permitted courts to remand decisions to the

Labor Relations Board while maintaining jurisdiction over the action. *Id.*, at 368-369.

**D.**     **Remand Without Vacatur Would Deny Plaintiffs' Rights Under the Equal Access to Justice Act**

Remand without vacatur may circumvent plaintiffs ability under section 2412(d) of the

Equal Access to Justice Act ("EAJA"), to obtain fees awards for the successful prosecution of

their APA claim because the EAJA requires plaintiffs to be a prevailing party to a final

judgment. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and expenses shall

[submit a fee application] within thirty days of *final judgment* in the action") (emphasis added);

*See BARK v. Larsen*, 423 F. Supp. 2d 1135 (D. Or. 2006) (*citing Buckhannon Bd. & Care Home,*

*Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001)) (stating that a

plaintiff cannot be a prevailing party for purposed of the EAJA if it achieves the desired result of

the lawsuit through voluntary action by the defendant and not through a final judgment by a

court).

Because the error that federal defendants now seek to fix was disclosed to them by plaintiffs in this litigation, it would be unjust to allow federal defendants to deprive plaintiffs of their remedy under the EAJA.

## IV.
## THE GOVERNMENT'S PROPOSED REMAND PROCESS IS INCONSISTENT WITH THE PURPOSE OF THE CLEAN AIR ACT'S PROCESS

Consistent with the intent of the CAA and its regulatory scheme, any remand to the BIA should require that the federal defendants re-do their conformity determination analysis in its entirety.

Notice of a two-year-old conformity determination runs afoul of the CAA regulatory scheme. Specifically, the regulations require that the implementation plan be the "most recent revision." 40 CFR § 93.152. Similarly, the regulations specifically require the use of the *latest* planning assumptions for the area encompassing the federal action, derived from the estimates of population, employment, travel, and congestion most recently approved by the area's metropolitan planning organization. 40 CFR § 93.159(a). The regulations also require the use of the *latest* and *most* accurate emission estimation techniques available. 40 CFR § 93.159(b). In that regard, it is important to note that since the federal defendants made their conformity determination, the San Joaquin Valley Air Pollution Control District (the "Air District"), which is responsible for implementing the SIP and air quality regulations in the valley, is now using a different model for estimating emissions.[9] *See also*, *Official Release of EMFAC2011 Motor Vehicle Emission Factor Model for Use in the State of California*, 78 Fed. Reg. 14533 (Mar. 6, 2013) ("EPA is approving and announcing the availability of the latest version of the California EMFAC model (short for EMission FActor) for use in state implementation plan (SIP) development and transportation conformity in California.")

---

[9] New California Emissions Estimator Model (CalEEMod) Deadline for Transition: July 1, 2012, SAN JOAQUIN VALLEY AIR POLLUTION CONTROL DISTRICT, http://www.valleyair.org/workshops/postings/2012/3-21-12-caleemod/caleemod_training_march2012_announcement.pdf (last visited, Sep. 3, 2013). A copy is provided as Exhibit I to the Declaration of Sean M. Sherlock.

Further, the regulations require that all analyses be completed *before* the determination of conformity is made. 40 C.F.R. §93.158(d). So the federal defendants' suggestion that they will simply re-notice agencies and tribes, and return to this Court in 90 days to resume the litigation, is incompatible with these requirements. These provisions of the regulations are intended to work in concert with the public notice and comment requirements of § 93.155 and § 93.156, to "allow the public the opportunity to examine information used in the applicability calculations and draft conformity determination, to question the draft determination, to review others' comments, and, after the final determination, to use legal means, if necessary, to influence the project." *Determining Conformity of General Federal Actions to State or Federal Implementation Plans*, 58 Fed. Reg. 63214, 63234 (Nov. 30, 1993); *see also* 40 CFR § 93.160 ("Any proposed change in the mitigation measured is subject to the reporting requirements of § 93.156 [sic] and the public participation requirements of § 93.157 [sic].").

Allowing the agency to now issue a perfunctory notice to only governmental agencies and tribes two years after it issued its final conformity determination would undermine the purpose of the regulation. *See Corley v. U.S.*, 556 U.S. 303, 304 (2009) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (internal citations and quotations omitted). Federal defendants should not be permitted to divorce the agency and tribal notice requirements of 40 C.F.R. § 93.155 from the public notice requirements of 40 C.F.R. § 93.156, because to do so is inconsistent with the purpose of the regulatory scheme, which contemplates that notice of the draft conformity will be given to the government agencies at the same time it is given to the public generally – not two years later.

Accordingly, the agency must be required to issue a new conformity determination and repeat all public participation and agency/tribal notice requirements under § 93.155 and § 93.156.

# V.
## CONCLUSION

The federal defendants have violated the Clean Air Act. Rather than accepting the consequences of their error by withdrawing their decisions, they ask this Court to take the extreme step of putting this litigation on hold while allowing them to fix their mistake mid-stream in a manner that dishonors the intent and purposes of the Clean Air Act. For the foregoing reasons, voluntary remand without vacatur is improper. Plaintiffs respectfully request that this Court deny the motion, and require federal defendants to either withdraw their decisions or defend them in the forthcoming motions for summary judgment. Alternatively, if for any reason this Court is inclined to grant the motion, the federal defendants should be required to re-do their conformity determination in its entirety under current standards, and re-notice their draft determination to the public as well as the agencies and tribes.

Dated: September 3, 2013

By: */s/ Sean M. Sherlock*
*/s/ Benjamin S. Sharp* _____

Benjamin S. Sharp (D.C. 211623)
Elisabeth C. Frost (D.C. 1007632)
PERKINS COIE, LLP
700 Thirteenth Street, N.W.
Suite 600
Washington, D.C. 20005-3960
Telephone:   202.654.6200
Facsimile:    202.654.6211
BSharp@perkinscoie.com
EFrost@perkinscoie.com

Heidi McNeil Staudenmaier
(*Admitted Pro Hac Vice*)
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren Street
Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6366
Facsimile: 602.382.6070
HStaudenmaier@swlaw.com

Sean M. Sherlock
(*Admitted Pro Hac Vice*)
Harsh P. Parikh
(*Admitted Pro Hac Vice*)
SNELL & WILMER L.L.P.
Plaza Tower
600 Anton Boulevard
Suite 1400
Costa Mesa, California 92626
Telephone: 714.427.7000
Facsimile: 714.427.7799
ssherlock@swlaw.com
hparikh@swlaw.com

***Attorneys for Plaintiffs Stand Up For
California!, Randall Brannon, Madera
Ministerial Association, Susan Stjerne,
First Assembly of God–Madera, and
Dennis Sylvester***