# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STAND UP FOR CALIFORNIA!, *et al.* | |
| Plaintiffs, | |
| v. | Civil Action No. 12-2039 (BAH) |
| UNITED STATES DEPARTMENT OF INTERIOR, *et al.* | Judge Beryl A. Howell |
| Defendants, | |
| NORTH FORK RANCHERIA OF MONO INDIANS, | |
| Defendant-Intervenor. | |

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Stand Up For California!, Randall Brannon, Madera Ministerial Association, Susan Stjerne, First Assembly of God-Madera and Dennis Sylvester (collectively, the "plaintiffs"), have moved for an order compelling the United States Department of the Interior ("DOI"), Sally Jewell[1], in her official capacity as Secretary of the United States Department of the Interior (the "Secretary"), Bureau of Indian Affairs ("BIA"), and Kevin Washburn, in his official capacity as Assistant Secretary of Indian Affairs, (collectively, the "federal defendants"), to produce a privilege index and to supplement the administrative record ("AR") with certain documents, which purportedly are adverse to the federal defendants' decisions subject to challenge in this lawsuit. Pls.' Mot. Supp. AR and Compel Production of

---

[1] Sally Jewell has succeeded Kenneth Salazar as DOI's Secretary and, consequently, is automatically substituted in place of Mr. Salazar as a party to this action. *See* FED. R. CIV. P. 25(d).

Privilege Index ("Pls.' Mot."), ECF No. 85.[2]  For the reasons set forth below, the plaintiffs'

motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual and Procedural Background

As summarized in the Court's prior Memorandum Opinion denying the plaintiffs' request

for a preliminary injunction, the plaintiffs originally filed this lawsuit to challenge "two separate

but related decisions of the Secretary of the United States Department of the Interior ('the

Secretary') regarding a 305.49-acre parcel of land located in Madera County, California ('the

Madera Site')."  *See Stand Up for California! v. U.S. Dep't of Interior*, 919 F. Supp. 2d 51, 54

(D.D.C. 2013) (citing Compl. ¶¶ 1, 31, ECF No. 1).  Specifically, the plaintiffs challenge as

arbitrary and capricious, in violation of the Administrative Procedures Act, 5 U.S.C. § 706, the

federal defendants' first decision, in September 2011, pursuant to the Indian Gaming Regulatory

Act ("IGRA"), 25 U.S.C. § 2719(b)(1)(A), to allow the defendant-intervenor North Fork

Rancheria of Mono Indians (the "North Fork Tribe") to build a resort casino on the Madera Site,

and the federal defendants' second decision, in November 2012, to accept the Madera Site into

trust for the benefit of the North Fork Tribe.  *Id*. at 54-55.

On April 26, 2013, the federal defendants lodged the original AR containing records

pertinent to the "November 26, 2012, decision to accept a 305.49-acre tract of land into trust for

the North Fork Rancheria of Mono Indians in Madera County, California, pursuant to the Indian

Reorganization Act, 25 U.S.C. § 465. . . [and the] September 1, 2011, determination pursuant to

the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*"  AR Certification of Nancy

Pierskalla, Acting Dir., DOI's Office of Indian Gaming, ¶ 2, ECF No. 51-1.  Following review of

---

[2] The plaintiffs have requested oral argument on the pending motion, Pls.' Mot. at 2, but given the sufficiency of the parties' written submissions, this request is denied.  *See* U.S. Dist. Ct. Rules, D.D.C., Local Rule 7(f) (allowance of oral hearing is "within the discretion of the court").

this AR, the plaintiffs filed a motion to compel the federal defendants to produce a privilege log and to supplement the AR.  *See generally* Pls.' Mot.  While agreeing to supplement the record with certain documents identified by the plaintiffs, the federal defendants declined to add some of the same documents at issue in the pending motion.  Defs.' Opp'n to Pls.' Mot. Compel Prod. Of Privilege Index and Supp. AR ("Defs.' Opp'n") at 1- 2, ECF No. 69.  The federal defendants also agreed to "produce a privilege log for documents contained in the administrative record," but contended that "[f]or documents outside of the administrative record [] no privilege log is necessary."  *Id.* at 2; *see also* Pls.' Mot. (Decl. of Sean M. Sherlock ("Sherlock Decl."), ¶ 5), ECF No. 85-1 (acknowledging that federal defendants produced list of redacted documents included in the AR).

While the plaintiffs' motion to compel was pending, the Court granted the federal defendants' motion to stay the case and remand to the agency for the limited purpose of allowing the federal defendants to comply with the notice requirements of the Clean Air Act.  *See* Mem. and Order, ECF No.  77.  Since the partial remand was anticipated to result in supplementation of the AR, the Court denied, without prejudice, the plaintiffs' motion to compel supplementation of the AR and production of a privilege index.  Minute Order (December 16, 2013).

When the stay ended, the federal defendants, on May 5, 2014, lodged a supplemental AR. Notice of Filing Supp. AR, ECF No. 83.  As detailed in the Certification of Administrative Record, the federal defendants supplemented the original AR with documents "inadvertently omitted" that were requested by the plaintiffs, as well as other documents located by DOI's Solicitor's Office.  AR Certification of Paula Hart, Dir., DOI's Office of Indian Gaming ("Hart Certification"), ¶¶ 3-4, ECF No. 83-1.  In addition, the original AR was supplemented "with

documents, communications, and other materials relating to the partial remand consistent with the Court's memorandum and order, dated December 16, 2013." *Id.* ¶ 6.

Shortly thereafter, the plaintiffs filed their Second Amended Complaint, which added a new claim challenging, as arbitrary and capricious, the federal defendants' third decision, in October 2013, to take no action to disapprove, within the statutory allowed period, the Class III Gaming Compact between the North Fork Tribe and the State of California, thereby allowing this compact to become effective upon the agency's publication of the compact in the Federal Register. Second Am. Compl., ¶¶ 98-104 (Fifth Claim for Relief), ECF No. 84 (challenging Secretary's decision "to allow the 45-day window to expire after which the compact was considered approved and thereafter publish notice of the approval in the Federal Register"). Despite the stay having been lifted, no notice has been docketed of additional supplementation of the AR with any documents pertinent to the plaintiffs' new claim in the Second Amended Complaint.

The plaintiffs contend that, even as supplemented, the AR does not contain "documents plaintiffs have identified as relevant to plaintiffs' claims under the Indian Reorganization Act ("IRA"), the Indian Gaming Regulatory Act ("IGRA"), and the National Environmental Policy Act ("NEPA")." Pls.' Mem. Supp. Mot. Compel Prod. Of Privilege Index and Supp. AR ("Pls.' Mem.") at 4, ECF No. 85. The plaintiffs further complain that the "federal defendants have also refused to provide a privilege log or index identifying any documents that were withheld from the administrative record." *Id.* Consequently, the plaintiffs now renew their motion to compel further supplementation of the AR and production of a privilege index by the federal defendants. The specific documents that the plaintiffs seek to add to the AR are described below.

## B.      Documents at Issue

The plaintiffs have identified two sets of documents that they believe should be included in the AR but that the federal defendants decline to add (the "Disputed Documents").[3]  The first set of documents were obtained by the plaintiffs from the BIA, pursuant to a Freedom of Information Act ("FOIA") request, Sherlock Decl. ¶ 12(1), and consists of three pieces of correspondence, each of which is over twenty years old, between the BIA and Ron Goode, who identifies himself in the earliest document as "Tribe Chairman, correspondant [sic]" (collectively, "Goode Documents").  Sherlock Decl., Ex. F at 1, ECF No. 85-7. These three documents are:

1. A one-page letter, dated September 7, 1983, from Ron Goode to the BIA's Office of Federal Acknowledgement ("OFA"), captioned "Letter of Intent" and indicating that on behalf of "a representation of the North Fork Band of the Mono Indian Tribe," he is "taking the first step toward forming the North Fork Mono Band of Indians, to become Federally Recognized."  Sherlock Decl., Ex. F.

2. A 36-page document, received on May 15, 1990 by BIA,[4] captioned "Petition for Federal Acknowledgement from the North Fork Mono Tribe For Status Clarification: Reinstatement of Federal Acknowledgment, Prepared for Submission to: the Secretary of the United States Department of Interior."  Sherlock Decl., Ex. G, at 2, ECF No. 85-8. This document lists 72 "folders" with a description of the contents of each "folder."  *Id.*

---

[3] The plaintiffs also seek supplementation of the AR with the North Fork Community Development Council ("CDC") master plan for the development of the Old Mill Site, Pls.' Mot. at 2, and the federal defendants agree that this document "will be added to the record."  Defs.' Opp'n at 2 n. 1.  Thus, the plaintiffs' motion is granted, in part, as conceded with respect to the CDC master plan.  The plaintiffs further request that "the Court set a date by which time the federal defendants must add this document, and any other documents the Court determines should be added, to the record."  Pls.' Reply Mem. Supp. Mot. Suppl. AR and Compel Prod. of Privilege Index ("Pls.' Reply"), at 1 n. 1, ECF No. 92.  Rather than set a specific date, the Court will direct the parties to confer and jointly propose a schedule for supplementation of the AR as promptly as feasible.

[4] The plaintiffs describe this document as "received by [sic] on May 15, 1990 by the OFA," Sherlock Decl. ¶ 12(b), but no receipt date can be discerned on the document itself.

3.  A ten-page letter, dated October 28, 1991, from the BIA's Director of Tribal Services to

Ron Goode, describing the results of an "initial review for obvious deficiencies and

significant omissions of the North Fork Mono petition for Federal acknowledgement as

an Indian tribe." Sherlock Decl., Ex. H at 1, ECF No. 85-9. The letter states that the

"review indicates that there are obvious deficiencies and significant omissions in the

North Fork Mono petition . . . [which] leaves many questions unanswered regarding

whether the North Fork Mono group meets the Acknowledgement criteria." *Id.* at 2.

The second set of documents consists of three letters, dated July 16, 2013, August 9,

2013, and November 20, 2013 (collectively, "2013 Letters"), from California Secretary of State

Debra Bowen to Paula Hart, Director of DOI's Office of Indian Gaming. Pls.' Mot., Attach. 12

(Decl. of Cheryl Schmit ("Schmit Decl."), Exs. J, K, L, ECF No. 85-12. Each of these letters

addresses the status of the Tribal-State Gaming Compacts entered into by the State of California

with the North Fork Rancheria of Mono Indians and the Wiyot Tribe.

## II.    LEGAL STANDARD

Under the APA, "the court shall review the whole record or those parts of it cited by a

party." 5 U.S.C. § 706. "The record consists of the order involved, any findings or reports on

which that order is based, and 'the pleadings, evidence, and other parts of the proceedings before

the agency.'" *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting FED.

R. APP. P. 16(a)). As the Supreme Court explained, "[t]he task of the reviewing court is to apply

the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the

record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470

U.S. 729, 743-744 (1985). Otherwise, the reviewing court would consider *de novo* material not

included in the agency record and "reach its own conclusions based on such an inquiry." *Id.* at

744.  Such a *de novo* inquiry is inconsistent with applying the arbitrary and capricious standard, where "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Hence, "[i]t is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made."  *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997); *see also Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *Deukmejian v. Nuclear Regulatory Comm'n,* 751 F.2d 1287, 1325 (D.C. Cir. 1984) (en banc) ("Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President."), *vacated en banc in part on other grounds,*760 F.2d 1320 (D.C. Cir. 1985).  When "the record before the agency does not support the agency action, [] the agency has not considered all relevant factors, or [] the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Florida Power & Light Co*., 470 U.S. at 744.

Supplementation of the administrative record is only appropriate in exceptional or "unusual" circumstances.  *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) ("[W]e do not allow parties to supplement the record 'unless they can demonstrate unusual

circumstances justifying a departure from this general rule.'" (quoting *Tex. Rural Legal Aid v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991))); *Am. Wildlands*, 530 F.3d at 1002; *see also Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 112 (D.D.C. 2009) ("A court that orders an administrative agency to supplement the record of its decision is a rare bird.").

The D.C. Circuit has recognized three narrow instances in which supplementation of an administrative record may be appropriate before reaching the merits of an APA challenge to agency action: "(1) if the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,' (2) if background information was needed 'to determine whether the agency considered all the relevant factors,' or (3) if the 'agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach*, 628 F.3d at 590 (quoting *Am. Wildlands*, 530 F.3d at 1002); *see James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996).

Underlying these exceptions, however, is the "strong presumption" that an agency has properly compiled the entire record of materials that it considered, either directly or indirectly, in making its decision. *See Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) ("Although an agency may not unilaterally determine what constitutes the administrative record, the agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary."). To overcome that presumption, a plaintiff "must put forth concrete evidence that the documents it seeks to add to the record were actually before the decisionmakers." *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (internal quotation and citations omitted); *see also Silver State Land, LLC v. Beaudreau*, 2014 U.S. Dist. LEXIS 100959, at *7-14 (D.D.C. July 24, 2014).

## III.    DISCUSSION

The plaintiffs contend that the Disputed Documents should be added to the AR because they "were known by the federal defendants at the time they made the challenged decisions," and are both relevant and adverse to the challenged decisions.  Pls.' Mem. at 4.  The federal defendants and the North Fork Tribe vigorously dispute each of these characterizations of the Disputed Documents.  For the reasons discussed below, the plaintiffs' arguments regarding the Goode Documents are simply not persuasive. In addition, the plaintiffs have failed to make the requisite showing for entitlement to a privilege index for documents outside the AR. The plaintiffs' motion is granted, however, with respect to the remaining documents they seek to add to the AR.

### A.    Goode Documents

The plaintiffs contend that supplementation of the AR with the Goode Documents is appropriate since this set of documents (1) was obtained from the BIA and, consequently, known to the federal defendants, and (2) is both relevant and adverse to the second challenged decision to take land into trust for the North Fork Tribe.  The federal defendants and North Fork Tribe deny that the Goode Documents were known to, let alone considered by, the decision-makers within the federal defendants at the time of the second challenged decision and further contend that this set of documents is not relevant or adverse such that no supplementation of the AR is warranted.

As to the threshold question, the plaintiffs argue that the Goode Documents were "known to the agency at the time of the decision" because they were "either submitted to the BIA or created by the BIA, and they were located in BIA files."  Pls.' Mem. at 7.  The federal defendants and the North Fork Tribe counter that just because decades-old documents may rest

in agency files does not make their inclusion in the AR appropriate, even if the documents are relevant, when they were neither presented to nor considered by the actual decision-makers involved in the challenged determination. Defs.' Opp'n at 13 ("The mere possession or production of a document does not…obligate an agency to include it in the administrative record, even if it is, unlike these documents, relevant."); Def.-Int.'s Opp'n to Pls.' Mot. Supp. AR ("Def.-Int.'s Opp'n") at 4 ("It is not—and could not be—the law that for APA purposes an agency is deemed to have 'considered,' even 'indirectly,' every document that any agency employee has ever created, reviewed, or placed in a file."). The federal defendants and the Tribe are clearly correct. An agency's possession of certain records, as confirmed by their disclosure in response to a FOIA request, is not sufficient to show that the same records were considered by the agency in connection with a decision subject to an APA challenge and, consequently, mere possession triggers no requirement to include such records in the administrative record. *See Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008) (denying plaintiff's motion to supplement administrative record with records obtained in response to FOIA request since "plaintiff must do more than imply that the documents at issue were in the [agency]'s possession . . . . Rather, plaintiff must prove that the documents were before the actual decisionmakers involved in the determination") (internal citations omitted); *Pac. Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) (denying plaintiff's motion to supplement administrative record with records obtained in response to FOIA request since "there is no evidence that the [agency's] decisionmaker(s) were actually aware of the fourteen documents Plaintiffs seek to include").

To bolster their argument that the Goode Documents were known to the federal defendants, the plaintiffs cite overlapping information in both this set of disputed documents and

the AR regarding the historical background and ancestry of the North Fork Tribe. Based upon the similarity of contents, the plaintiffs draw the conclusion that the Goode Documents "cannot be distinguished from the documents used by the federal defendants and the applicant Tribe to show that the Tribe was under federal jurisdiction in 1934." *Id.* at 9-10. Similarity of contents with information in the AR, however, is simply not the test of whether an excluded document should be included in an AR. Rather, the test for whether a document, regardless of its precise contents, should be included in the administrative record is straight-forward: the administrative record includes all materials that were "'before the agency at the time the decision was made.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (quoting *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981); *see also Am. Wildlands*, 530 F.3d at 1002 ("Ordinarily, review is to be based on the full administrative record that was before the Secretary at the time he made his decision." (internal quotations omitted)). For example, in *IMS, P.C. v. Alvarez*, 129 F.3d at 623-624, the D.C. Circuit rejected as having "no legal support" the plaintiff's proposition that the record could be supplemented with documents not before the agency at the time of the challenged decision because the documents "merely elaborated on details already included in the record." Thus, absent any demonstration by the plaintiffs that the Goode Documents were before the decision-makers of the second challenged decision, or any allegation that such decision-makers were aware of but in bad faith purposely remained ignorant of the Goode Documents, the plaintiffs' argument regarding overlapping information in the Goode Documents and the AR is unavailing.

Finally, in reply, the plaintiffs argue that the Goode Documents were, in fact, before the federal defendants since the plaintiffs informed the federal defendants about the Goode Documents on May 16, 2013, as part of the plaintiffs' initial motion to compel, which was filed

before the partial remand of this case and supplementation of the AR.  Pls.' Reply Mem. Supp.

Mot. Supp. AR and Compel Production of Privilege Index ("Pls.' Reply") at 5-6, ECF No. 92.

This argument is spurious, since the plaintiffs essentially concede that the Goode Documents

were not brought to the attention of the federal defendants at the critical time, in 2012, when the

second challenged decision to take land into trust for the North Fork Tribe was made.

Accordingly, since no evidence has been presented that the decades-old Goode Documents were

before the agency decision-makers at the time of the second challenged decision, the federal

defendants did not err by excluding the Goode Documents from the compilation of documents

for the AR pertaining to that decision.

Moreover, the plaintiffs have failed to show that the Goode Documents are either relevant

or adverse.  To provide context for their contention that the Goode Documents are relevant and

adverse to the federal defendants' second challenged decision, the plaintiffs explain the

undisputed legal framework limiting "the Secretary's authority to take land into trust on behalf of

Indian tribes . . . to 'those tribes that were under the federal jurisdiction of the United States

when the IRA was enacted in 1934.'"  Pls.' Mem. at 6 (citing *Carcieri v. Salazar,* 555 U.S. 379,

395 (2009) and *City of Sault Ste. Marie, Mich. v. Andrus*, 532 F. Supp. 157, 161 (D.D.C. 1980));

Defs.' Opp'n at 5; Def.-Int.'s Opp'n at 7.  According to the plaintiffs, the propriety of the federal

defendants' second challenged decision in 2012 to take land-into-trust for the North Fork Tribe

turns on the "solitary question" of the "Tribe's status in 1934, not its current status as a federally

recognized Indian Tribe."  Pls.' Mem. at 7.  The plaintiffs reason that the Goode Documents

show the existence of "another Indian group," with a similar name, "similar history," and

"common ancestors with" the North Fork Tribe, Pls.' Mem. at 12, and that this information

somehow "undermine[s]" or "contradict[s] the evidence in the [AR] supporting the claim that the

applicant Tribe was necessarily the North Fork Band of landless Indians and was the group that voted in the 1935 election." *Id.* This reasoning is flawed.

As the federal defendants indicate, the Goode Documents amount to "an incomplete and unsuccessful petition for federal acknowledgement filed with the Secretary in 1983 by a group of individuals led by Ron Goode . . . ." Defs.' Opp'n at 8. The Goode group of unknown numbers and unidentified members, other than Ron Goode, never attained separate federal recognition as a tribe and, thus, stands in stark contrast to the North Fork Tribe, which had its tribal status restored by the stipulated judgment in *Tillie Hardwick v. United States*, Civil No. C-79-1710-SW, at 3 (N.D. Cal. Aug. 2, 1983). Notably, nothing in the Goode Documents appears to challenge the tribal status of the North Fork Tribe. Thus, to the extent that the Goode group sought tribal status independent of the North Fork Tribe, the Goode documents are entirely irrelevant to any evaluation of the Tribe's status. As the federal defendants point out, even if the Goode group were recognized, it would not alter or affect the rights of the North Fork Tribe, making the Goode Documents "doubly irrelevant." Def.-Int.'s Opp'n at 7.

In any event, the exact relationship, if any, between the North Fork Tribe and Ron Goode or his group is unclear since the record about them is sparse. This group may have no relationship to the North Fork Tribe, currently be part of the North Fork Tribe or, if not, merely descendants of early tribal members. The plaintiffs invite elaborate speculation about this amorphous group and its relationship, if any, to the North Fork Tribe, stating the Goode Documents "could, for example, demonstrate that the North Fork Band and not the applicant Tribe was the beneficiary of the 1916 purchase and was under federal jurisdiction in 1934," Pls.' Mem. at 12, or "[a]lternatively, . . . that no particular tribal identity existed at the Rancheria in 1934," *id*. at 13, or "between 1916 and 1935," *id*. at 14. Rather than speculate, the Court

concludes that the existence of Ron Goode and his group, which at some point over twenty years ago intended to seek, without following through, independent tribal status, has little to no bearing on the bases for recognition of the North Fork Tribe.[5]

In sum, the Goode Documents were not before the federal defendants when they made the second challenged decision, nor are they relevant or adverse. Accordingly, this set of documents need not be added to the AR.

### B.    2013 Letters

The Court turns next to consideration of the second set of documents, the 2013 Letters, which the plaintiffs contend should be added to the AR. According to the plaintiffs, the 2013 Letters are relevant and adverse because they "show that the Secretary had a duty to disapprove the compact and breached that duty by publishing the approval in the Federal Register." Pls.' Mem. at 2. The plaintiffs' reasoning is that, under the IGRA, DOI may approve or disapprove any Tribal-State compact entered into between an Indian Tribe and a State within 45 days of receipt, and the compact becomes effective when the Secretary publishes the approval in the Federal Register. 25 U.S.C. §§ 2710(d)(8)(A) and (D). Inaction during this 45-day period is deemed to be approval. 25 U.S.C. §§ 2710(d)(8)(C). Disapproval of such a compact is warranted

---

[5] In a last gasp effort to show the Goode Documents are relevant to show the lack of a "specific tribal identity at the Rancheria," the plaintiffs contend that the federal defendants are taking an inconsistent position regarding the North Fork Tribe, which has federally recognized tribal status, and the Mishewal Wappo Indians, which does not have such status, even though the Mishewal Wappo Indians living on the Alexander Valley Rancheria participated, in 1935, in a Section 18 election under the IRA, 25 U.S.C. §479. Pls.' Mem. at 14 ("Despite the North Fork Tribe's current federal recognition and the Mishewal Wappo Tribe's lack thereof, the DOI's position in the Alexander Valley case is inconsistent with the federal defendants' position in this case regarding what Section 18 election [under the Indian Reorganization Act ("IRA"), 25 U.S.C. §479] shows."). To the contrary, with respect to both tribes, the federal defendants have taken the consistent position that federal jurisdiction in 1934 may be established by proof of an IRA election by the Indians residing at a rancheria, but not to any larger group of Indians, who simply identify themselves by the same name as Indians voting on a rancheria. *See* Defs.' Opp'n at 10 ("[M]embership in the Mishewal Wappo group is not equivalent to membership in the Alexander Valley Rancheria."); Def.-Int.'s Opp'n at 10 ("DOI's only point was that such an election was proof that the Alexander Valley Rancheria was under federal jurisdiction in 1934, rather than a larger group consisting of the 'Mishawal Wappo tribe.'") (internal quotations omitted). Moreover, unlike the North Fork Tribe, whose tribal status was restored after termination, the status of the Mishewal Wappo Indians living on the Alexander Valley Rancheria was not. Def.-Int.'s Opp'n at 9.

if it violates a provision of IGRA. 25 U.S.C. § 2710(d)(8)(B); *see also Amador County v. Salazar*, 640 F.3d 373, 381 (D.C. Cir. 2011).

In this case, DOI published approval of the State of California-North Fork Rancheria of Mono Indians Gaming Compact in the Federal Register in October, 2013, *see* 78 Fed. Reg. 62649-01 (October 22, 2013), when the 2013 Letters show the compact was subject to a state referendum. The plaintiffs correctly summarize the 2013 Letters as informing the federal defendants that, under California law, "the statute approving the compact would not take effect until January 1, 2014, if at all," Pls.' Mem. at 17 (quoting Schmit Decl. ¶ 5, Ex. J); that "if a referendum petition qualifies for the ballot, the statute will not go into effect until the day following the election, if at all," *id.*; and that since a referendum had qualified for the November 2014 California General Election, "the 'statutes implementing the compacts are stayed until the voters act to adopt or reject the compacts in November 2014,'" Pls.' Mem. at 18 (quoting Schmit Decl. ¶ 7, Ex. L). In the plaintiffs' view, due to the referendum, the compact "was not yet entered into by the State of California, and the Secretary was aware of this fact," making "the Secretary's publication of approval in the Federal Register [] in violation of IGRA." Pls.' Mem. at 18.

The federal defendants and North Fork Tribe claim that the 2013 Letters need not be added to the AR because these letters are neither relevant nor adverse to, and were not before the federal defendants at the time of, the challenged decisions in 2011 and 2012. Plainly, the 2013 Letters post-date the federal defendants' 2011 and 2012 decisions, which were challenged in the plaintiffs' first two complaints and guided the compilation of the original and supplemental AR. Defs.' Opp'n at 1, 10; Def.-Int.'s Opp'n at 11. As the North Fork Tribe explains, "[t]he first decision, made in September 2011, determined that North Fork would be permitted to conduct

gaming on the Madera land after its acquisition pursuant to IGRA's two-part determination, and the second decision, made in November 2012, determined that the United States would acquire the Madera land to hold it in trust for the benefit of North Fork to conduct gaming activities." Def.-Int.'s Opp'n at 13. The 2013 Letters plainly "cannot be relevant" to these two challenged decisions "when they [did] not exist at the time [the] decision [was] made." Defs.' Opp'n at 10.

While the 2013 Letters are unrelated to the federal defendants' first and second challenged decisions in 2011 and 2012, respectively, they are relevant to the plaintiffs' new claim challenging the federal defendants' third decision, in 2013, to take no action on the Tribal-State compact and to publish that compact in the Federal Register. That new claim was asserted for the first time in the Second Amended Complaint, which was filed on May 23, 2014, two weeks after the lodging of the supplemental AR. The federal defendants correctly posit "[t]he land-into-trust decision does not rise and fall with the new claim related to the Federal Register notice of the Tribal-State gaming compact" since "the land may be in trust with or without a Tribal-State gaming compact." Defs.' Opp'n at 11-12. At the same time, the federal defendants and the North Fork Tribe concede that the 2013 Letters are relevant and were indisputably before the federal defendants at the time of the third challenged decision regarding approval of the Tribal-State compact and, thus, would appropriately be included in any AR compiled for consideration of the plaintiffs' most recent challenge to that aspect of the federal defendants' actions. *See* Defs.' Opp'n at 17 (acknowledging that the 2013 Letters "are relevant to the claim added to Stand Up's most recent complaint, but not the IGRA or land-into-trust decisions.").

Both the federal defendants and the North Fork Tribe contend that the plaintiffs' challenge to the federal defendants' third decision regarding the Tribal-State gaming compact raises a separate, distinct challenge to agency action that requires a separate administrative

record, and they suggest adoption of a bifurcated briefing schedule that would allow resolution of issues related to the challenged decisions in 2011 and 2012 to move forward separately from consideration of the plaintiffs' challenge to the third decision. *See* Defs.' Opp'n at 12 (indicating that new claim "should not delay summary judgment briefing on the land-into-trust decision (which should begin as soon as possible after this motion is resolved), should be briefed separately from the land-into-trust decision and should not be, post-hoc, incorporated into a prior and independent decision to accept land-into-trust"); Def.-Int.'s Opp'n at 12 ("To avoid further delays, the Stand Up Plaintiffs' recently added challenge to this decision—set forth in paragraphs 98-104 of the Second Amended Complaint they filed on May 23, 2014—should be adjudicated separately from their earlier challenge to the land-into-trust decision, with a separate administrative record (yet to be certified) and on a separate briefing schedule.").[6]

The plaintiffs indicate that any necessary supplementation of the AR with documents relevant to the federal defendants' third challenged decision would be "far from voluminous, consisting of maybe a few hundred pages, most of which consist of the compact itself," citing the fact that "[t]here is no record of decision . . . no public comment period [and] very few letters." Pls.' Reply at 16. Consequently, according to the plaintiffs, "[p]roduction of documents relevant to the Secretary's decision to publish the approval will not 'slow down' the briefing in this case." *Id*. In other words, the parties' dispute over whether the 2013 Letters should be added to the AR, which was compiled for purposes of evaluating the federal defendants' 2011 and 2012 challenged decisions, has devolved into a scheduling dispute over the briefing schedule for

---

[6] The plaintiffs do not dispute that the 2013 Letters are not relevant to the federal defendants' 2011 and 2012 challenged decisions and, instead, make the strained argument that the partial remand of this case to complete the federal defendants' Clean Air Act compliance meant "there was no longer a final decision," requiring inclusion in the AR of the 2013 Letters since they "were clearly received before a new decision was made in the case and a revised administrative record was certified by federal defendants." Pls.' Mem. at 18. Contrary to the picture painted by the plaintiffs, the partial remand did not operate as a vacatur of the challenged decisions in 2011 and 2012.

resolution of all of the plaintiffs' claims at the same time or on a bifurcated schedule. As the plaintiffs note, the filing of the new claim in the Second Amended Complaint was not feasible while the case was stayed and, thereafter, "[t]he only thing preventing [the] plaintiffs from briefing this [new] claim is that federal defendants have not produced the administrative record since the notice of approval was published, and apparently, they refuse to do so while this motion [is] pending." *Id*. at 17.

Given the concession that the 2013 Letters are relevant to the plaintiffs' claim, albeit a claim recently filed in the Second Amended Complaint, the 2013 Letters should be added to the AR. To the extent that the parties seek to avoid any unnecessary delay and conserve judicial and the parties' resources in this action, they are encouraged to confer and propose a prompt schedule for further supplementation of the AR and a comprehensive briefing schedule for consideration simultaneously of all the plaintiffs' pending claims.

### C.    Privilege Index

The plaintiffs complain that they "have yet to receive a log of documents that were withheld from production of the [AR]" and, consequently, urge "this Court [to] require the federal defendants to produce an index of all documents that are being withheld from the agency's decision file." Pls.' Mem. at 19-20. Although the plaintiffs concede that privileged and deliberative process documents need "not be deemed part of the record," they nonetheless seek, over the objection of the federal defendants, a log identifying the reasons for the withholding of any document from the AR. *Id*. at 20. The plaintiffs' request for a privilege index for documents not included in the AR is without legal basis.

In this Circuit, requests for privilege logs of documents that may have been withheld from an administrative record on grounds of privilege or deliberative process are routinely

denied. *See, e.g.*, *Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 267 (D.D.C. 2013) ("the Defendants are entitled to rely on the deliberative process privilege, and are not required to submit a log of privileged documents"); *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health and Human Serv.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009), *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011) ("Defendants do not need to produce a privilege log describing documents withheld from the administrative record."); *accord Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 372 n.4 (D.D.C. 2007) (characterizing as "unfair" plaintiff's criticism of agency "for not claiming a privilege and filing a privilege log as to documents that [agency] claims should not be in the administrative record in the first place").

The reasons for denial of privilege log requests for withheld documents in APA cases are two-fold. First, as the plaintiffs acknowledge, in APA cases, privileged and deliberative documents reflecting internal agency deliberations are "immaterial as a matter of law—unless there is a showing of bad faith or improper behavior," since the "reasonableness of the agency's action is judged in accordance with its stated reasons." *In re: Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998). Thus, privileged and deliberative process documents need not be compiled or disclosed by the agency as part of the administrative record. *See Am. Petroleum Tankers Parent, LLC,* 952 F. Supp. 2d at 265 ("It is well established in this District that materials protected by the deliberative process privilege are not part of the Administrative Record for purposes of review of agency action."); *AMFAC Resorts, LLC v. United States Dep't of the Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001) ("Deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the [administrative] record.").

"As a corollary to this principle, the agency need not provide a privilege log of the documents withheld pursuant to the privilege." *Am. Petroleum Tankers Parent, LLC,* 952 F. Supp. 2d at 265; *see also Dist. Hosp. Partners, L. P. v. Sebelius*, 971 F. Supp. 2d 15, 32 (D.D.C. 2013) ("[p]redecisional and deliberative documents 'are not part of the administrative record to begin with, 'so they' do not need to be logged as withheld from the administrative record'" (quoting *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 52 (D.D.C. 2009), *rev'd on other grounds,*670 F.3d 1238 (2011)); *California v. United States Dep't of Labor*, No. 2:13-cv-02069-KJM-DAD, 2014 U.S. Dist. LEXIS 57520, at *36-37 (E.D. Cal. Apr. 24, 2014) ("[B]ecause internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log."). As one Court succinctly explained, "requiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA." *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 U.S. Dist. LEXIS 119789, 22-26 (N.D. Ill. Aug. 23, 2013).

Second, agencies are accorded a presumption of regularity in the compilation of the administrative record in APA cases and this presumption may be overcome to warrant review of extra-record material only when the plaintiff establishes bad faith on the part of the agency or other exceptional circumstances, such as "where the administrative record itself is so deficient as to preclude effective review." *Hill Dermaceuticals, Inc.*, 709 F.3d at 47 (citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.") (internal quotations omitted)); *Menkes v. United States Dep't of Homeland Sec.*, 637

F.3d 319, 339 (D.C. Cir. 2011) (noting "the proper legal standard" for extra-record review in agency cases "is only appropriate 'when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review'" (quoting *Baptist Mem. Hosp. - Golden Triangle v. Sebelius*, 566 F.3d 226, 230 (D.C. Cir. 2009)); *Zemeka v. Holder*, 963 F. Supp. 2d 22, 25 (D.D.C. 2013) ("Under exceptional circumstances, courts may permit a party to present 'extra-record' evidence — 'evidence outside of or in addition to the administrative record that was not necessarily considered by the agency.'" (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006))).  In short, "reliance on extra-record evidence 'is the exception, not the rule.'"  *API v. SEC*, 714 F.3d 1329, 1334 (D.C. Cir. 2013) (quoting *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514).

In sum, since privileged and deliberative materials are not part of the administrative record as a matter of law, efforts in APA cases to obtain access to, or logs of, such materials are properly analyzed under the standard applicable to disclosure of extra-record material. Consequently, to obtain a log of privileged and deliberative materials excluded from the administrative record, plaintiffs must overcome, with clear evidence, the presumption of regularity in the agency proceedings by showing bad faith or other exceptional circumstances. *See Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 99 (D.D.C. 2013) (noting "well-established presumption that an agency has properly designated the administrative record [and that] . . . clear evidence to the contrary rebuts this presumption") (internal quotations and citations omitted).

Set against these principles, in this case, the plaintiffs have failed to carry their burden of showing entitlement to a privilege index by overcoming the presumption that the documents in the AR have been properly compiled.  No bad faith or other gross procedural irregularity has

been alleged or established by the plaintiffs that would overcome that presumption and trigger the need to review extra-record documents or make the production of a privilege log appropriate. *See Dist. Hosp. Partners, L. P.*, 971 F. Supp. 2d at 33 (finding that since "plaintiffs have not rebutted the presumption of regularity for the administrative records in this case[,]. . . the Secretary need not provide a privilege log, or produce any privileged materials for this Court's *in camera* review").

Accordingly, the plaintiffs' request for a privilege index of any privileged or deliberative process documents withheld from the AR is denied.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiffs' motion to compel supplementation of the AR is granted in part and denied in part.  Specifically, this motion is granted and the federal defendants are directed to supplement the AR with the CDC master plan and the 2013 Letters. The motion is denied with respect to the Goode Documents and the demand for a privilege index of records not included in the AR.  The parties are further directed to submit jointly a proposed scheduling order to govern further proceedings in this case.[7]

An Order consistent with this Memorandum Opinion will be contemporaneously filed.

Date:  October 15, 2014

_____
BERYL A. HOWELL
United States District Judge

---

[7] The Scheduling Order previously entered, on March 18, 2014, to govern proceedings following the lodging of a revised AR did not become effective in the event, as occurred, that the plaintiffs filed a renewed motion to supplement the record.